Filed 8/23/18

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

| | |
|---|---|
| ALFREDO FUENTES, | |
| Plaintiff and Respondent, | E066242 |
| v. | (Super.Ct.No. RIC1515384) |
| TMCSF, INC., | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County. Craig Riemer, Judge. Affirmed.

Arent Fox, Halbert B. Rasmussen, and George N. Koumbis for Defendant and Appellant.

Pestotnik and Ross H. Hyslop for Plaintiff and Respondent.

Plaintiff Alfredo Fuentes entered into a written agreement with defendant TMCSF, Inc., doing business as Riverside Harley-Davidson (Riverside), to buy a motorcycle. At the same time, he entered into a written agreement with Eaglemark Savings Bank (Eaglemark) to finance the purchase. The latter agreement included an arbitration clause; the former agreement did not.

Fuentes then filed this action against Riverside, alleging that Riverside made various misrepresentations and violated various statutes in connection with the sale of the motorcycle. Riverside petitioned to compel arbitration. The trial court denied the petition.

We will hold that Riverside was not entitled to compel arbitration because it was not a party to the arbitration clause, it was not acting in the capacity of an agent of a party to the arbitration clause, and it was not a third party beneficiary of the arbitration clause. Moreover, Fuentes was not equitably estopped to deny Riverside's claimed right to compel arbitration. Hence, we will affirm.

I

FACTUAL BACKGROUND

The following facts are taken from the evidence submitted in connection with Riverside's petition to compel arbitration.

On April 19, 2015, Fuentes entered into a written agreement to buy a new motorcycle from Riverside (Purchase Agreement). The stated parties to the Purchase Agreement were Fuentes and Riverside. The Purchase Agreement provided, "Federal law and California law apply to this . . . Purchase Agreement." The Purchase Agreement did not include an arbitration clause.

At the same time, Fuentes also entered into a written agreement to finance the purchase (Security Agreement). The stated parties to the Security Agreement were Fuentes and Eaglemark Savings Bank (Eaglemark). Eaglemark identified itself as "a

2

subsidiary of Harley-Davidson Credit Corp."  "ESB" was defined as Eaglemark and its successors and assigns.  The Security Agreement was signed only by Fuentes; no one signed it on Eaglemark's behalf.

The Security Agreement included an "Itemization of Amount Financed" (capitalization altered), which specified that, aside from sales taxes and license fees payable to the government, Eaglemark was to pay the loan proceeds to Riverside.

The Security Agreement also included an arbitration clause, which, as relevant here, provided:  "The parties acknowledge and agree that this clause and the Federal Arbitration Act (9 U.S.C. § 1 et seq.) shall govern any and all Claims (defined below) between You . . . on the one hand, and ESB and/or any of ESB's successors, assigns, parents, subsidiaries, or affiliates and/or any employees, officers, directors, agents, of the aforementioned on the other hand.  The parties agree to arbitrate any and all claims, controversies, or disputes including but not limited to those arising out of or relating in any way to Your loan or account, this [Security Agreement], advertising or claims relating to this [Security Agreement] or the sale of this [Security Agreement], . . . as well as recovery of any claim under this [Security Agreement] (collectively 'Claims').  Any Claims, including but not limited to the applicability of this arbitration clause, shall be resolved by neutral binding arbitration . . . ."

It also provided, "[T]his [Security Agreement] . . . will be governed by the laws of the State of Nevada and applicable Federal law."

3

Finally, it included a provision, required by federal law (16 C.F.R. § 433.2), stating: "Any holder of this consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained with the proceeds hereof."

II

PROCEDURAL BACKGROUND

Fuentes brings this action as a putative class action. The operative complaint alleges that Riverside and other defendants "routinely advertise new, assembled motorcycles to consumers in a misleading manner . . . . As a consequence . . . , consumers are routinely misled about the true prices of buying new, assembled motorcycles, and end up paying fees and charges which are: (a) misrepresented, inflated, or double-billed; (b) false and fraudulent; (c) illusory; and/or (d) improperly disclosed, itemized, and/or summed." It asserts causes of action for negligence, false advertising, unfair competition, and violations of the Consumers Legal Remedies Act (Civ. Code, § 1750 et seq.).

Riverside filed a petition to compel arbitration. After hearing argument, the trial court denied the petition.

It explained: "The arbitration provision is solely in the agreement between [Fuentes] and Eaglemark . . . , to which [Riverside] was not a party. The agreement expressly identifies the scope of the obligation to arbitrate as being limited to those 'between' plaintiff 'on the one hand, and ESB and/or any of ESB's successors, assigns,

4

parents, subsidiaries, or affiliates . . . on the other hand.' In light of that language, there is no intent that the arbitration provision extend to claims between the plaintiff and a third party like [Riverside]. Nor is the [court] persuaded that [Fuentes] is equitably estopped from denying the application of the arbitration provision to this lawsuit."

III

RIVERSIDE HAS NO STANDING TO INVOKE THE ARBITRATION CLAUSE

A. *General Legal Principles*.

"'Code of Civil Procedure section 1281.2 allows a party to an arbitration agreement to petition to compel arbitration. By stating that a party to an arbitration agreement may petition to compel arbitration, the statute assumes that a proceeding to compel arbitration will be between the signatories to the agreement.' [Citation.]

"'Nonsignatory defendants may enforce arbitration agreements "where there is sufficient identity of parties." [Citation.] Enforcement is permitted where the nonsignatory is the agent for a party to the arbitration agreement [citation], or the nonsignatory is a third party beneficiary of the agreement [citation]. In addition, a nonsignatory may enforce an arbitration agreement under the doctrine of equitable estoppel." (*Jenks v. DLA Piper Rudnick Gray Cary U.S. LLP* (2015) 243 Cal.App.4th 1, 8-9, fn. omitted.)

"Where, as here, the evidence is not in conflict, we review the trial court's denial of arbitration de novo. [Citation.]" (*Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC* (2012) 55 Cal.4th 223, 236.)

5

We face a preliminary question regarding choice of law. The Security Agreement, which contains the arbitration clause, provides that Nevada law applies. In their briefs, however, the parties do not discuss Nevada law; the only state law on which they rely is that of California.[1] "'"[G]enerally speaking the forum will apply its own rule of decision unless a party litigant timely invokes the law of a foreign state . . . ."'" [Citations.]" (*Washington Mutual Bank, FA v. Superior Court* (2001) 24 Cal.4th 906, 919.) Because "[t]he parties and the trial court assumed that California law applies . . . we may apply California law . . . ." (*Brown v. Grimes* (2011) 192 Cal.App.4th 265, 275.)

B.    *Standing as a Party*.

Riverside contends that the Purchase Agreement and the Security Agreement constitute a single contract, and hence it is a party to the arbitration clause.

Under Civil Code section 1642, "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together." Here, the Purchase Agreement and the Security Agreement, by their terms, were not between the same parties; thus, Civil Code section 1642 does not apply.

More generally, however, "where two or more written instruments are executed contemporaneously, with reference to each other, for the purpose of attaining a preconceived objective, they must all be construed together and effect given if possible to the purpose intended to be accomplished; and this principle controls whether each of the

---

[1]    Indeed, Riverside concedes that "Nevada substantive law [does not] apply in this context."

several instruments was signed by all or only some of the parties to the transaction. [Citation.]" (*Goodman v. Severin* (1969) 274 Cal.App.2d 885, 895.)

"'While it is the rule that several contracts relating to the same matters are to be construed together [citation], it does not follow that for all purposes they constitute one contract.'" (*Hartford Accident & Indemnity Co. v. Sequoia Ins. Co.* (1989) 211 Cal.App.3d 1285, 1300.) The rule is simply a particular application of the more general principle that "[w]e construe [a] contract in light of the circumstances under which it was made . . . . [Citation.]" (*Medical Staff of Doctors Medical Center in Modesto v. Kamil* (2005) 132 Cal.App.4th 679, 683.)

For example, in *Amtower v. Photon Dynamics, Inc.* (2008) 158 Cal.App.4th 1582, two corporations entered into an agreement to merge (Merger Agreement), which included an attorney fee clause. (*Id*. at pp. 1588, 1591, 1605-1606.) At the same time, the president of one of the corporations (see *id*. at p. 1587) entered into an agreement with the other corporation regarding the stock that he acquired in the merger (Affiliate Agreement); it did not include an attorney fees clause. (*Id*. at pp. 1588, 1591, 1606.) Ultimately, the president sued the other corporation, asserting causes of action based on the Affiliate Agreement, but lost. (*Id*. at pp. 1590-1591, 1605.)

The prevailing corporation argued that it was entitled to attorney fees because (among other things) "the Affiliate and Merger [A]greements were interdependent components of the same transaction and, therefore, should be construed together." (*Amtower v. Photon Dynamics, Inc.*, *supra*, 158 Cal.App.4th at p. 1609.) The appellate

7

court held that the attorney fee clause did not apply. It acknowledged the general principal that separate contracts, entered into as part of a single transaction, even if by different parties, must be construed together. (*Id*. at pp. 1609-1610, citing *Harm v. Frasher* (1960) 181 Cal.App.2d 405.) Nevertheless, it concluded that "nothing in *Frasher*, or the general rule as stated in Civil Code section 1642, supports the conclusion that, where the contracts form part of a single integrated transaction, a discrete term contained in one agreement is necessarily applicable to the parties to one of the other agreements." (*Id*. at p. 1610.)

In sum, then, the fact that the Purchase Agreement and the Security Agreement could be considered one transaction is not dispositive. Rather, just as when any issue turns on contractual interpretation, we must look to the mutual intent of the parties. (Civ. Code, § 1636; *Ameron Internat. Corp. v. Insurance Co. of State of Pennsylvania* (2010) 50 Cal.4th 1370, 1378.) "'Such intent is to be inferred, if possible, solely from the written provisions of the contract.' [Citations.] 'If contractual language is clear and explicit, it governs.' [Citation.]" (*State of California v. Continental Ins. Co.* (2012) 55 Cal.4th 186, 195.)

The arbitration clause itself specified the entities to which it applied. It applied to "Claims . . . between You . . . on the one hand, and ESB and/or any of ESB's successors, assigns, parents, subsidiaries, or affiliates and/or any employees, officers, directors, agents, of the aforementioned on the other hand." To state the obvious, Riverside is not

8

Eaglemark. Also, as far as the record shows, Riverside is not a successor, assign, parent, subsidiary,[2] affiliate,[3] employee, officer, or director of Eaglemark.

In sum, then — leaving aside Riverside's claim that it was an agent of Eaglemark, which we discuss in part III.C, *post* — Riverside was not a party to the arbitration clause and was not a nonparty expressly specified as able to invoke the arbitration clause.

C.     *Standing as an Agent.*

Riverside contends that it is entitled to compel arbitration because it is an agent of Eaglemark. As mentioned, the arbitration clause required arbitration of claims between Fuentes and Eaglemark's agents. And even when an arbitration clause does not expressly extend to agents, an agent for a party may be able to enforce an arbitration clause.

Riverside asserts that it was Eaglemark's agent because it could bind Eaglemark as the lender in any given motorcycle sale transaction. (See *Rental Housing Owners Assn. of Southern Alameda County, Inc. v. City of Hayward* (2011) 200 Cal.App.4th 81, 91 [agency is a relationship in which "one party, the agent, 'represents another, called the principal, in dealings with third persons.'"].) We disagree, for three reasons.

---

[2]     Riverside repeatedly refers to Eaglemark as "the subsidiary lender" or simply "the subsidiary." From the context, this seems to mean merely that Eaglemark was subject to all claims and defenses that the buyer could assert against Riverside. However, it is an odd and potentially misleading term to use to describe this concept.

[3]     In the trial court, counsel for Riverside conceded that there was "not sufficient evidence before the Court" to show that Riverside was an affiliate of Eaglemark.

First, there was no evidence that Riverside actually had this power. "Because the existence of agency is generally a question of fact, it logically follows that agency must be established with evidence." (*Zimmerman v. Superior Court* (2013) 220 Cal.App.4th 389, 401.) Here, all the evidence showed was that Fuentes entered into a financing agreement on Riverside's premises on the same day as he purchased a motorcycle from Riverside. For all we know, Riverside had to contact Eaglemark and obtain its approval for each and every financing agreement.

Riverside asserts a number of facts which, in its view, prove agency. These include that: (1) "A typical motor vehicle sale is conditioned upon the sale being financed after a purchase." (2) "Harley-Davidson purchases" are "unique" in that "the motorcycle sale and financing occur at the same time." (3) "[T]he purchase price is paid specifically to the dealer simultaneously with the lender obtaining a security interest in the motorcycle." However, there was no evidence of any of these facts. Again, all the evidence showed was that the customer entered into the two agreements at the same time.

Riverside also points to the boilerplate allegation of Fuentes's complaint that all of the defendants were agents of each other. The named defendants included Riverside, Harley-Davidson, Inc., and Harley-Davidson Motor Company, Inc., but they did not include Eaglemark. To fill this logical gap, Riverside notes that the Security Agreement identified Eaglemark as "[a] subsidiary of Harley-Davidson Credit Corp." However, the named defendants also did not include Harley-Davidson Credit Corp. There is no

10

evidence regarding the relationship, if any, between Harley-Davidson Credit Corp. and the named defendants.

Second, as a general rule, a dealer does not act as the agent of the financing agency simply because the dealer used forms supplied by the financing agency. (*Bescos v. Bank of America* (2003) 105 Cal.App.4th 378, 396; *LaChapelle v. Toyota Motor Credit Corp.* (2002) 102 Cal.App.4th 977, 992; see also *Luck v. Primus Automotive Financial Services, Inc.* (Ala. 2000) 763 So.2d 243, 246-247 [lender provided dealer with forms and with a handbook containing guidelines for leases that it would accept].) Riverside may be aware of these cases; it appears to be trying to get around them by arguing that Harley-Davidson financing is "unique." As already discussed, however, they have not shown that it is unique in any way that would prove agency.

Third, even assuming that Riverside was Eaglemark's agent, Fuentes's claims are made against Riverside in its own capacity, not in its (supposed) capacity as Eaglemark's agent. This precludes Riverside from invoking the arbitration clause. (*McCarthy v. Azure* (1st Cir. 1994) 22 F.3d 351, 359-361 [where plaintiff and corporation, but not corporation's agent, were parties to arbitration clause, agent could not compel arbitration of plaintiff's claims against him in his individual capacity].) Eaglemark had no reason to give its agents a right to compel arbitration of their own disputes with its borrowers. "However broad may be the terms of a contract, it extends only to those things concerning which it appears that the parties intended to contract." (Civ. Code, § 1648.)

"Most courts have held that a nonsignatory who is the agent of a party to a contract containing an arbitration clause may compel the other parties to the contract to arbitrate their claims against him or her for liability *arising out of the contract* . . . but not other claims. [Citations.]" (Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 2017) ¶ 5.266.5, p. 5-274, ellipsis in original.) Riverside's asserted liability arises out of the Purchase Agreement, not out of the Security Agreement.

D.      *Standing as a Third Party Beneficiary.*

Next, Riverside contends that it was entitled to enforce the arbitration clause as a third party beneficiary of the Security Agreement. It points out that it was the intended recipient of the loan proceeds.

"A third party beneficiary may enforce a contract expressly made for his benefit. [Citation.] And although the contract may not have been made to benefit him alone, he may enforce those promises directly made for him. [Citations.]" (*Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 943.)

But "a third party beneficiary . . . can only enforce those promises made directly for his benefit. [Citation.]" (*Clark v. California Ins. Guarantee Assn.* (2011) 200 Cal.App.4th 391, 398.) "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others. He is not a contracting party; his right to performance is predicated on the contracting parties' intent to benefit him. [Citations.] As to any provision made not for his benefit but for the benefit of the contracting parties

12

or for other third parties, he becomes an intermeddler." (*Murphy v. Allstate Ins. Co.*, *supra*, 17 Cal.3d at p. 944 [judgment creditor of insured tortfeasor is a third party beneficiary of the insurance policy but cannot enforce the policy's covenant of good faith].)

Turning to the specific topic of arbitration, "a third party beneficiary of an arbitration agreement may enforce it. [Citations.]" (*Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 838.) But "[t]o invoke the third party beneficiary exception, [a third party beneficiary] ha[s] to show that *the arbitration clause . . .* was 'made expressly for [its] benefit.' [Citation.]" (*Ibid.*, italics added.)

We accept, for the sake of argument, that Riverside was the third party beneficiary of Eaglemark's promise to pay the loan proceeds to it. The arbitration clause, however, had its own list of intended third party beneficiaries; as we have already discussed, Riverside was not among them. Thus, the contract affirmatively disproves any intent that the arbitration clause should benefit Riverside.

What is particularly overreaching about Riverside's third party beneficiary argument is that it is trying to enforce the arbitration clause against Fuentes. However, it was Fuentes who — by making a promise to repay, a promise to pay interest, and other promises — conferred on Riverside its right to the loan proceeds. If Riverside has any rights as a third party beneficiary, they should run against Eaglemark, not Fuentes.

E.     *Standing as a Result of Equitable Estoppel*.

Finally, Riverside contends that Fuentes is equitably estopped to deny the applicability of the arbitration clause.

"A nonsignatory plaintiff may be estopped from refusing to arbitrate when he or she asserts claims that are 'dependent upon, or inextricably intertwined with,' the underlying contractual obligations of the agreement containing the arbitration clause. [Citation.]  'The focus is on the nature of the claims asserted . . . .'  [Citation.] . . . '"[T]*he plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory . . . is . . . always the sine qua non of an appropriate situation for applying equitable estoppel*."'  [Citation.]  '[E]ven if a plaintiff's claims "touch matters" relating to the arbitration agreement, "the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action."'  [Citation.]  'The fundamental point' is that a party is 'not entitled to make use of [a contract containing an arbitration clause] as long as it worked to [his or] her advantage, then attempt to avoid its application in defining the forum in which [his or] her dispute . . . should be resolved.'  [Citation.]"  (*Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 306, italics in original.)

We do not perceive any way in which Fuentes is relying on the Security Agreement to establish his own causes of action.  Riverside argues:  "Th[e] allegedly false price and costs were advertised at the time of sale contemporaneously with [Fuentes]'s acquiring the loan to finance his motorcycle purchase.  [Riverside] then

14

inputted those allegedly false costs in the [Security Agreement], which [Fuentes] signed at [Riverside]." As we understand this, it reduces to an argument that the loan includes the amount of the improper charges and fees. That merely means that Fuentes may have a defense to paying the full amount of the loan to Eaglemark. Arguably, he would be relying on the *Purchase Agreement* in any action attacking the *Security Agreement*. But this is not a two-way street. He is not relying on the *Security Agreement* in this action attacking the *Purchase Agreement*. Even if he had paid cash for the motorcycle, his complaint would be identical.

Riverside points out that its counsel argued that "without this [Security Agreement], [Fuentes] would not have a case," and the trial court responded, "That may be true." However, it immediately went on to rule that Fuentes was not estopped to dispute that. In context, it appears to have been merely accepting counsel's position for the sake of argument. In any event, as our review is de novo, we are not bound by any findings (much less comments) by the trial court.

We therefore conclude that equitable estoppel does not apply.

IV

DISPOSITION

The order appealed from is affirmed. Fuentes is awarded costs on appeal against Riverside.

CERTIFIED FOR PUBLICATION

RAMIREZ

P. J.

15

We concur:

SLOUGH
                                        J.

FIELDS
                                        J.