**SECOND DIVISION**
**MILLER, P. J.,**
**MERCIER and COOMER, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**May 28, 2020**

# In the Court of Appeals of Georgia

A20A0155. ATLANTA CONCORDE FIRE SOCCER
ASSOCIATION, INC. et al. v. GRAHAM.

COOMER, Judge.

Atlanta Concorde Fire Association, Inc. ("Concorde Fire"), Gregg Blasingame, James Harris, and Garvin Quamina (collectively, the "Appellants") appeal a trial court order denying their motion to compel arbitration of a defamation claim filed by G. G., a minor child, through her mother, Margaret Graham (collectively, the "Appellees"). Appellants contend that the trial court erred in determining that the Appellees' claims were not subject to arbitration, arguing that the Appellants are parties to the agreement at issue and, alternatively, that they can enforce the arbitration provision of the agreement as third party beneficiaries, as agents, or under the doctrine of equitable estoppel. Appellants further contend that the trial court erred in refusing to

compel arbitration because an arbitrator is required to determine the "gateway" issue of whether a dispute is subject to arbitration. For the following reasons, we affirm.

Concorde Fire is a non-profit entity that operates a youth soccer program. Concorde Fire participates in the U.S. Soccer Development Academy (the "Academy"). Blasingame, Harris, and Quamina are employees of Concorde Fire. In 2017, G. G. played youth soccer for Concorde Fire. In July 2017, G. G. executed an agreement with the Academy and the United States Soccer Federation, Inc. to participate in certain Academy programs (the "Agreement"). The Agreement contains a "Waiver and Release of Claims" (the "Release") and a clause for "Arbitration as the Exclusive Remedy" (the "Arbitration Clause").

The Release states:

4. *Waiver and Release of Claims*:

A. The undersigned Participant and Participant/Guardian, for themselves and on behalf of Participant, and the Participant's heirs, next of kin, personal representatives, successors and/or assigns, do hereby release and forever discharge the Academy, the United States Soccer Federation, Inc., and each of their affiliated clubs, teams and companies, and any of their members, directors, officers, employees, volunteers, sponsors, independent contractors or agents (collectively, the "Releasees"), of and from any and all manner of action or actions, cause or causes of action,

in law or in equity for indemnity or otherwise, liabilities, claims, damages, losses, costs, or expenses, of any nature whatsoever, known or unknown, in any way relating to or arising from Participant's enrollment in or participation with the Academy. Without limiting the generality of the foregoing this waiver and release includes, but is not limited to, claims relating to personal injury, illness or death; damage to, or loss or theft of, property (including personal items, cars and money); the receipt of medical care or treatment for any physical or mental condition; use of facilities, services, premises and equipment; exposure to inclement weather; and involvement in accidents.

The Arbitration Clause states:

7. *Arbitration as the Exclusive Remedy*:

A. The parties agree that all disputes relating to or arising out of this Agreement and/or the Participant's participation in the Academy shall be presented to the American Arbitration Association ("AAA") in accordance with the rules of the AAA before a retired state or federal court judge for arbitration pursuant to the commercial rules of that association as the sole and exclusive remedy for resolving such disputes. . . .

The Agreement contains a California choice of law provision.

The Appellees allege that on February 9, 2018, Quamina and Harris met with G. G.'s parents at a coffee shop and told them, within earshot of others, that G. G. had

3

used her cell phone to send and receive nude pictures while on the team bus. The Appellees further allege that G. G. was dismissed from the team, that Harris informed the Academy that she had been dismissed, and that G. G. has been unable to join another top tier youth soccer club due to the statements made by Quamina and Harris.

The Appellees filed a lawsuit against the appellants alleging breach of contract, defamation, and unjust enrichment. The Appellants filed a "Motion to Dismiss, For Summary Judgment, or in the Alternative to Compel Arbitration." The trial court found that the claims for breach of contract and unjust enrichment were barred by the Release. However, the trial court found that the defamation claim was not barred by the Release and the Appellants could not enforce the Arbitration Clause. The Appellants obtained a certificate of immediate review and filed an application for interlocutory appeal, which we granted. This appeal followed.

This Court reviews de novo a trial court's order granting or denying a motion to compel arbitration. *Miller v. GGNSC Atlanta, LLC*, 323 Ga. App. 114, 117 (1) (746 SE2d 680) (2013). "Whether there is a valid agreement to arbitrate is generally governed by state law principles of contract formation, and is appropriate for determination by the court." *Triad Health Mgmt. of Ga., III, LLC v. Johnson*, 298 Ga.

4

App. 204, 206 (2) (679 SE2d 785) (2009). The party seeking arbitration bears the burden of proving the existence of a valid and enforceable agreement to arbitrate. Id.

1. The Appellants contend that the trial court erred in refusing to compel arbitration on the basis that they are not parties to the Agreement. We disagree.

The parties agreed below that the matter is governed by California law. The Appellants argue that under California law, they are parties to the Agreement and can enforce the arbitration clause. In support of this argument, the Appellants cite to *Laswell v. AG Seal Beach, LLC*, 189 Cal. App. 4th 1399, 1407 (117 Cal. Rptr. 3d 310) (2010). In *Laswell*, the Court of Appeal for the Second District of California held that two companies were parties to an arbitration agreement which they did not execute because they were related to the executing party. Id. However, in *Laswell*, one of the non-executing parties owned the company that executed the arbitration agreement. Id. Additionally, the arbitration agreement at issue was written on the letterhead of the other non-executing party which also served as the management company of the executing party. Id. Finally, all three parties were named in the complaint, and the executing party shared defense counsel with the non-executing parties. Id. at 1402, 1407.

Here, however, the circumstances are distinguishable from those in *Laswell*. G. G. did not file the lawsuit against the Academy. Furthermore, although the Appellants cite to several paragraphs of the complaint where the Appellees have alleged that Concorde Fire is a part of the Academy, these allegations appear to indicate only that Concorde Fire is one of several soccer clubs in the country that are participant organizations, not that they are legally-related entities. Thus, the trial court did not err in refusing to enforce the Arbitration Clause on the ground that the Appellants were not parties to the Arbitration Clause.

2. Next, the Appellants argue that the trial court erred in refusing to compel arbitration because they are third party beneficiaries who can enforce the Arbitration Clause. Again, we disagree.

"A third party beneficiary may enforce a contract expressly made for his benefit. And although the contract may not have been made to benefit him alone, he may enforce those promises directly made for him." *Fuentes v. TMCSF, Inc.*, 26 Cal. App. 5th 541, 551 (237 Cal. Rptr. 3d 256) (2018) (citation and punctuation omitted). But "a third party beneficiary can only enforce those promises made directly for his benefit." Id. (citation and punctuation omitted). "A third party should not be permitted to enforce covenants made not for his benefit, but rather for others" and "[a]s to any

6

provision made not for his benefit but for the benefit of the contracting parties or for other third parties, he becomes an intermeddler." Id. at 551-552 (citation and punctuation omitted).

"The general rule is that only a party to an arbitration agreement may enforce it." *Ronay Family Ltd. Partnership v. Tweed*, 216 Cal. App. 4th 830, 837 (157 Cal. Rptr. 3d 680) (2013). "[A] third party beneficiary of an arbitration agreement may enforce it," but to invoke the third party beneficiary exception, the third party beneficiary must show that the *arbitration clause* was made expressly for their benefit. Id. at 838. Here, unlike the Release, which specifically states that the Appellees waived certain claims against "the Academy, the United States Soccer Federation, Inc., and each of their affiliated clubs, teams and companies, and any of their members, directors, officers, employees, volunteers, sponsors, independent contractors or agents[,]" the Arbitration Clause does not expressly state that it is for the benefit of its affiliated clubs or the directors or employees of their affiliated clubs. Accordingly, the Appellants have not shown that the trial court erred in finding that they were not third party beneficiaries who can enforce the Arbitration Clause.

3. The Appellants next argue that the trial court erred because they can enforce the Arbitration Clause under the doctrine of equitable estoppel. We do not agree.

Under California law, a nonsignatory of an arbitration agreement may enforce such an agreement against a signatory through the theory of equitable estoppel only under the following two conditions:

> (1) when a signatory must rely on the terms of the written agreement in asserting its claims against the nonsignatory or the claims are intimately founded in and intertwined with the underlying contract, and (2) when the signatory alleges substantially interdependent and concerted misconduct by the nonsignatory and another signatory and the allegations of interdependent misconduct are founded in or intimately connected with the obligations of the underlying agreement.

*Murphy v. DirecTV, Inc.*, 724 F3d 1218, 1229 (II) (B) (1) (9th Cir. 2013) (citation omitted).

Here, the defamation claim is based upon statements made by Quamina and Harris concerning the nude pictures allegedly sent by G. G., and it is not founded in or intertwined with the Agreement. Similarly, the Appellees did not allege "substantially interdependent and concerted misconduct" by Concorde Fire and the Academy. Thus, the trial court did not err by finding that the doctrine of equitable estoppel did not require the Arbitration Clause to be enforced between the parties in this case.

4. The Appellants next argue that the trial court erred because Concorde Fire can enforce the Arbitration Clause as an agent of the Academy. We do not agree.

Under California law, "[a] nonsignatory to an agreement to arbitrate may be required to arbitrate, and may invoke arbitration against a party, if a preexisting confidential relationship, such as an agency relationship between the nonsignatory and one of the parties to the arbitration agreement, makes it equitable to impose the duty to arbitrate upon the nonsignatory." *Westra v. Marcus & Millichap Real Estate Investment Brokerage Co.*, 129 Cal. App. 4th 759, 765 (28 Cal. Rptr. 3d 752) (2005).

Here, the Appellants have argued that Concorde Fire was an "affiliated club" of the Academy. However, the Appellants have failed to show how Concorde Fire acted as an agent for the Academy, or that it had any of the traditional authority to bind the Academy that an agent has. See *Secci v. United Independant Taxi Drivers, Inc.*, 8 Cal. App. 5th 846, 855 (214 Cal. Rptr. 3d 379) (2017) ("In the absence of the essential characteristic of the right of control, there is no true agency. The fact that parties had a preexisting relationship is not sufficient to make one party the agent for the other. An agency is proved by evidence that the person for whom the work was performed had the right to control the activities of the alleged agent." (citation and punctuation omitted)). Accordingly, the Appellants have not shown that the trial court

9

erred by finding that the Arbitration Clause did not apply to the them as agents of the Academy.

5. Finally, Appellants contend that the trial court erred by failing to allow an arbitrator to determine whether the case should have gone to arbitration. We disagree.

The United States Supreme Court has held that the parties to an arbitration contract "may agree to have an arbitrator decide not only the merits of a particular dispute, but also gateway questions of arbitrability[.]" *Henry Schein, Inc. v. Archer and White Sales, Inc.*, ___ U.S. ___ , ___ (II) (139 SCt 524, 529, 202 LE2d 480) (2019) (citation and punctuation omitted). However, "[c]ourts should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *First Options of Chicago, Inc. v. Kaplan*, 514 U. S. 938, 944 (II) (115 SCt 1920, 131 LE2d 985) (1995) (punctuation omitted). Here, as discussed in Division 1, the Appellants are not parties to the Agreement. There is no evidence in the record that the Appellants otherwise agreed with the Appellees to arbitrate this case. Thus, there can be no "clear and unmistakable evidence" that the Appellants and the Appellees agreed with each other to arbitrate arbitrability under the Agreement. Accordingly, the trial court did not err by not submitting this matter

10

to an arbitrator to determine arbitrability.

*Judgment affirmed. Miller, P. J., and Mercier, J., concur.*