Filed 8/15/23  Internat. Fruit Genetics v. Grapery CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIFTH APPELLATE DISTRICT

| | |
|---|---|
| INTERNATIONAL FRUIT GENETICS, LLC, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> GRAPERY, INC., <br><br> Defendant and Appellant. | F085739 <br><br> (Super. Ct. No. BCV-22-101869) <br><br><br> **OPINION** |

APPEAL from an order of the Superior Court of Kern County.  Bernard C. Barmann, Jr., Judge.

Covington & Burling, Jeffrey M. Davidson, Isaac D. Chaput, Melise Knowles, and Yiye Fu, for Defendant and Appellant.

Dentons US, Blake L. Osborn, Andrew Pendexter, Leah Bruno, and Brian E. Cohen, for Plaintiff and Respondent.

-ooOoo-

Appellant Grapery, Inc. appeals from an order denying its motion to compel arbitration of a lawsuit filed by respondent International Fruit Genetics, LLC ("IFG"). IFG's complaint alleges Grapery breached two nondisclosure agreements, misappropriated IFG's trade secrets, and engaged in unfair competition.  Grapery

contends the trial court erred in refusing to compel IFG to arbitrate under the arbitration clause contained in IFG's operating agreement. Grapery is not a signatory to IFG's operating agreement, but Grapery's founder and controlling shareholder, Jack J. Pandol, is.

The arbitration clause requires arbitration of any "action to enforce or interpret" the operating agreement and of disputes that are between or against IFG members. Grapery argues this lawsuit is arbitrable as an "action to interpret" the operating agreement and as a dispute between or against members. Grapery alternatively contends it can invoke the arbitration clause under equitable estoppel and third-party beneficiary principles.

We are unpersuaded by Grapery's arguments and affirm the lower court's order.

## FACTUAL AND PROCEDURAL BACKGROUND

Grapery is a company that grows, markets, and ships table grapes. Jack Pandol founded Grapery and has always been a majority owner. The record does not say when Grapery was founded, but we know it was founded before IFG. Grapery incorporated in 2007 and Pandol is now a 51% shareholder.[1]

_____

[1] On our own motion, we take judicial notice of Grapery's articles of incorporation from the California Secretary of State's website, which show Grapery was incorporated in 2007. (Evid. Code, §§ 459, subd. (a); 452, subd. (c); *Jones v. Goodman* (2020) 57 Cal.App.5th 521, 528, fn. 6 [taking judicial notice of articles of incorporation filed with the California Secretary of State on appellate court's own motion].)

We thus deny as unnecessary IFG's request to take judicial notice of the fact that Grapery was incorporated in 2007. IFG requested in a footnote in its respondent's brief that we judicially notice this fact from the reporter's transcript of the hearing on Grapery's motion to compel, where the court noted Grapery was incorporated in 2007. IFG did not cite any authority supporting its request.

Aside from the failure to cite supporting authority, we would deny IFG's request for judicial notice because it was not made by formal motion under California Rules of Court, rule 8.54, filed separately from the moving party's brief. (Cal. Rules of Court, rule 8.252(a)(1); see also rule 8.809(a); *Tenet Healthsystem Desert, Inc. v. Blue Cross of California* (2016) 245 Cal.App.4th 821, 834—835 [party's argument to take judicial

IFG was founded in 2001 by Pandol and four others. Pandol owns a 25% membership interest in IFG and has served as a manager since its inception. The company breeds and develops new varieties of tables grapes and other fruits. Its business model relies on licensing rather than selling the fruit cultivars it develops.

Pandol co-founded IFG to develop a pipeline for new varieties of table grapes that Grapery would be entitled to receive licenses to grow. To that end, IFG's operating agreement gives Pandol or his "nominees" the option to acquire through licensing agreements one-quarter of the new plant varieties IFG makes available. This option is in a clause entitled "Rights to New Varieties." Since IFG began issuing licenses to the first of its new varieties, Grapery has been Pandol's primary nominee to receive his share of the plants IFG makes available.

IFG from time to time shares data on its cultivars with its licensees, including Grapery. Before sharing such data and other confidential information, IFG requires that the licensee sign agreements ensuring IFG's proprietary information is not disclosed to others and not used for any unauthorized purpose.

Grapery and IFG entered into many confidentiality and nondisclosure agreements, including one in August 2020 called the "Mutual Confidentiality Agreement." Pandol told the other IFG managers that IFG should employ more restrictive licensing practices with fewer growers. Pandol believed this strategy change could achieve higher market pricing for fruit IFG was licensing and developing. The parties entered the Mutual Confidentiality Agreement to allow Grapery increased access to Grapery's cultivar performance data to explore strategic initiatives for IFG. The agreement requires Grapery to, among other things, "not use" IFG identified confidential information "for any purpose other than" the evaluation of marketing and licensing arrangements between

notice raised in respondent's brief insufficient for appellate court to take judicial notice of letters where no motion filed].)

3.

IFG and Grapery. It also provided Grapery would not use any disclosed information "in any manner to [IFG's] detriment." IFG provided Grapery extensive proprietary information after it signed the Mutual Confidentiality Agreement.

In summer 2021, IFG received an unsolicited acquisition offer. With growing tensions between Pandol and other managers regarding IFG's licensing strategy and other matters, all of IFG's members and managers, except Pandol, expressed an interest in possibly selling. As a result, IFG's members and managers, save for Pandol, instructed management to explore potential options. IFG solicited and received several indications of interest and decided to start a robust auction process to evaluate offers to buy the company's assets.

Grapery participated in the auction process. In August 2021, Grapery submitted a non-binding indication of interest to buy all of the IFG membership interests held by IFG's majority member. As part of its participation in the sales process, Grapery signed a nondisclosure agreement with IFG in October 2021 ("Nondisclosure Agreement") to receive proprietary and confidential information to help Grapery conduct due diligence. Grapery received information about plant and breeding varietals; price, volume, and market performance data; and revenue and expense forecasts.

Grapery also requested and received a copy of IFG's testing and breeding agreement with the University of Arkansas. IFG has had an exclusive agreement with the university since 2003 for the commercial use of the university's proprietary grape selections.

In February 2022, three entities, including Grapery, submitted final bids. IFG considered Grapery's to be the least favorable. The next month, IFG agreed to sell its assets to SNFL Investments LLC, and the parties signed a purchase agreement. Pandol initiated arbitration proceedings with the American Arbitration Association against IFG to block the sale, asserting that IFG's operating agreement requires the unanimous

consent of IFG's members.[2]  Pandol also filed a complaint in Kern County Superior Court under Code of Civil Procedure section 1281.8 in aid of the arbitration, seeking to enjoin the pending sale.[3]  The trial court granted Pandol's motion for a preliminary injunction of the sale.  The arbitrator later issued a preliminary injunction of its own preventing IFG from consummating the sale until the arbitration concludes.

Two weeks after Pandol secured a preliminary injunction stopping the sale, IFG filed the underlying complaint against Grapery in Kern County Superior Court.  The complaint pleads four causes of action:  (1) misappropriation of trade secrets under the California Uniform Trade Secrets Act (Civ. Code, § 3426 et seq.), (2) engaging in unfair competition (Bus. and Prof. Code, § 17200 et seq.), (3) breach of the Nondisclosure Agreement, and (4) breach of the Mutual Confidentiality Agreement.

The complaint alleges Grapery has embarked on an effort to develop a new arm of its business to compete directly with IFG.  It alleges Grapery in early 2022 approached the University of Arkansas about Grapery starting its own breeding program and entering into a relationship with the university similar to the university's relationship with IFG.  IFG contends that Grapery, to improve its negotiation position with the university, improperly used information (1) that it obtained from IFG's testing and breeding agreement with the university and (2) that it received from IFG during the sale process.

The complaint explains that IFG sent a cease-and-desist-letter to Grapery on May 31, 2022, demanding that Grapery stop its efforts to secure an arrangement with the University of Arkansas for access to the university's germplasm.  Grapery rejected the

---

[2] The operating agreement's arbitration clause dictates that arbitration proceedings be conducted in accordance with the American Arbitration Association's rules.

[3] Code of Civil Procedure section 1281.8, subdivision (b) provides:  "[a] party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending … an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief."

demand and suggested that it would be permitted to enter into such a relationship because IFG's impending asset sale would mean IFG would no longer be part of any operating business with which either Pandol or Grapery could even compete.

All of IFG's claims are based on Grapery's alleged improper usage of IFG's proprietary information to start a competing breeding program and enter into a similar arrangement with the University of Arkansas.

Grapery moved to compel arbitration of all of IFG's claims based on the arbitration clause in IFG's operating agreement. Grapery argued three grounds. First, it contended this action is part of a broader dispute between IFG and Pandol, and therefore should be viewed as a dispute "against [a] member" and thus arbitrable under the operating agreement's arbitration clause. IFG responded that Grapery is not an IFG member and Pandol is not a named defendant in the complaint, and thus the arbitration provision does not apply. Second, Grapery argued equitable estoppel principles compelled arbitration because IFG's claims are "inextricably intertwined with … Pandol's obligations and rights under the Operating Agreement," as the operating agreement allows Pandol to use IFG's proprietary information that he learns through his roles at IFG as he pleases. IFG responded that its claims against Grapery are not based at all on the operating agreement. Finally, Grapery contended it can compel arbitration as a third-party beneficiary of the operating agreement, in part because it has always been Pandol's "nominee" to receive licenses to IFG's new varietals. IFG countered that Grapery was not a third-party beneficiary of any aspect of the operating agreement. It pointed to the operating agreement's "No Third Party Beneficiary" clause, which provides that no other person or entities besides the signatories "shall have or acquire any right by virtue of this Agreement."

The trial court heard oral argument and at the end of the hearing stated it was denying the motion. The court entered a written order to that effect. As to Grapery's first ground, the court found this is not a dispute between IFG's members; it is a dispute

6.

between IFG and Grapery, and Grapery is not a member of IFG. The court also observed that IFG's claims seek relief for *Grapery's* alleged misappropriation of trade secrets and other confidential information, not for any of Pandol's conduct.

As to Grapery's equitable estoppel ground, the court found that none of IFG's claims are based on the operating agreement, and instead are based on Grapery's alleged breach of other agreements. The court also held that nothing in the operating agreement permits Pandol to use IFG business information "outside of [IFG's] business and affairs."

As to Grapery's third-party beneficiary ground, the court simply stated that "this action has nothing to do with the Operating Agreement." The court did not explicitly state whether Grapery was a third-party beneficiary of any aspect of the operating agreement.

## DISCUSSION

### I.      Standard of review

"We review the trial court's interpretation of an arbitration agreement de novo when, as here, that interpretation does not depend on conflicting extrinsic evidence." (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352 (*DMS*).) "Our de novo review includes the legal determination whether and to what extent nonsignatories to an arbitration agreement can enforce the arbitration clause." (*Ibid.*)

A court must order a dispute to arbitration "when the party seeking to compel arbitration proves the existence of a valid arbitration agreement covering the dispute." (*Laswell v. AG Seal Beach, LLC* (2010) 189 Cal.App.4th 1399, 1404—1405.) But despite the strong public policy in favor of arbitration, " 'there is no policy compelling persons to accept arbitration of controversies which they have not agreed to arbitrate….' " ' " (*DMS, supra,* 205 Cal.App.4th at p. 1352; *Avila v. Southern California Specialty Care, Inc.* (2018) 20 Cal.App.5th 835, 843.) "Because arbitration is a matter of contract, generally ' "one must be a party to an arbitration agreement to be bound by it or invoke it." ' " (*DMS, supra,* 205 Cal.App.4th at p. 1352.) "However, both California and

7.

federal courts have recognized limited exceptions to this rule, allowing nonsignatories to an agreement containing an arbitration clause to compel arbitration of, or be compelled to arbitrate, a dispute arising within the scope of that agreement." (*Id.* at p. 1353.) " ' "As one authority has stated, there are six theories by which a nonsignatory may be bound to arbitrate: '(a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing or alter ego; (e) estoppel; and (f) third-party beneficiary.' " ' " (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 859.)

## II. Arbitrability under the plain terms of the operating agreement

IFG's operating agreement arbitration clause reads in part:

> "Any action to enforce or interpret this Agreement or to resolve disputes between the Members or by or against any Member shall be settled by arbitration in accordance with the rules of the American Arbitration Association. Arbitration shall be the exclusive dispute resolution process in the State of California[.]" !(AA 88)!

Grapery argues that IFG's claims are arbitrable under the operating agreement's "plain text" because this lawsuit is both (1) an action to interpret the operating agreement and (2) a dispute between IFG members. We disagree.

### A. Not an action to interpret the operating agreement

Grapery first contends IFG's lawsuit is an "action to interpret" the operating agreement.[4] It reasons that two provisions of the operating agreement can be interpreted to provide Grapery a complete defense to all of IFG's claims, and thus resolving IFG's claims will require interpreting the operating agreement. The question is whether

---

[4] In its trial court motion, Grapery did not argue that this is an action to interpret the operating agreement, only that this is a dispute against a member. IFG does not object to Grapery's raising a new theory. While we generally do not allow appellants to raise theories on appeal that were not raised in the trial court, we can relax this rule in our discretion when the new theory "pertains only to questions of law on undisputed facts, which could not be altered by the presentation of additional evidence." (*Glassman v. Safeco Ins. Co. of America* (2023) 90 Cal.App.5th 1281, 1326.) We will allow Grapery to raise this new theory.

8.

asserting these provisions as a defense to IFG's claims constitutes an "action" for purposes of compelling arbitration under the operating agreement. We conclude asserting the provisions as a defense does not constitute an "action."

The first operating agreement provision Grapery references is:

> "Business Operation. Except as provided in this Agreement, no provision of this Agreement shall be construed to limit in any manner the Members in the carrying on of their own respective businesses or activities."

The second provision, entitled "Time Devoted to Company," addresses how much time IFG's managers must devote to IFG business. The general manager must devote substantially all of his time and effort to IFG exclusively. As for the other managers, the time provision says the fact they "have other business interests to which they devote their time and their position as a Manager of [IFG] shall not preclude or limit outside business activities. Such other Managers shall devote such time to the conduct of the business of the Company as each believes in good faith and discretion is necessary." Pandol is a manager, but not the general manager of IFG.

Grapery contends these provisions together mean that IFG's members "contemplated from the formation of the company that they would be entitled to carry on their own independent businesses without their roles in IFG 'limit[ing] them in any manner.' Thus, absent a specific contrary statement in the Operating Agreement, Mr. Pandol is entitled to use the information he obtained as a manager and member of IFG while conducting business as Grapery." In other words, Grapery contends the operating agreement allows Pandol to do whatever he wants with IFG's trade secrets, and since Pandol is involved with Grapery, by extension Grapery can also do what it likes with those secrets. Grapery asserts this reasoning as a complete defense to all of IFG's claims.

Even if these operating agreement provisions could be interpreted as providing a complete defense to IFG's claims, this still would not be an "action to interpret" the operating agreement because the assertion of a defense is not an "action." The Supreme

9.

Court of California's reasoning in *Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744 (*Mountain Air*) supports this conclusion. The question in that case was whether the successful assertion of an affirmative defense triggered the attorney fee provision in a contract that entitled the prevailing party in "any legal action … brought for the enforcement of" the contract to attorney fees. (*Id.* at p. 752.) The Supreme Court held it did not. (*Id.* at pp. 755—756.)

In *Mountain Air*, the seller of real property sued prospective purchasers for breach of a repurchase agreement. (*Mountain Air, supra,* 3 Cal.5th at pp. 748—749.) The prospective purchasers asserted in defense that a subsequent option agreement had created a novation of the initial repurchase agreement, granting them the right, but not the obligation, to buy the property. (*Id.* at p. 749.) The prospective purchasers prevailed at trial and moved to recover their attorney fees based on a provision in the option agreement that authorized attorney fees and costs to the prevailing party in any legal action or proceeding brought to enforce the option agreement. (*Ibid.*) The question was whether the prospective purchasers' assertion of the option agreement as an affirmative defense triggers the attorney fees provision in that agreement. (*Id.* at pp. 749—750.) The Supreme Court held it did not. (*Id.* at p. 750.)

The *Mountain Air* parties "agree[d] that an 'action' is synonymous with a lawsuit (Code Civ. Proc., § 22), and includes the assertion of any affirmative defenses." (*Mountain Air, supra,* 3 Cal.5th at pp. 752—753.) The defendant prospective purchasers "reason[ed] that because an action *includes* the assertion of an affirmative defense, the asserted defense, therefore, *constitutes* an action." (*Id.* at p. 753.) The plaintiff seller "counter[ed] that the assertion of an affirmative defense is a discrete procedural event *within* a lawsuit and is not itself a separate action[,]" and therefore "it is erroneous to equate an affirmative defense with an action or proceeding." (*Id.* at p. 753.)

The Supreme Court began its analysis by "address[ing] the underlying supposition that the assertion of an affirmative defense equates to or constitutes an action because it is

10.

encompassed within the latter." (*Mountain Air, supra,* 3 Cal.5th at p. 753.)  The Court stated that although an action may refer to the "entire judicial proceeding," each individual occurrence within an action is not itself an action.  (*Id.* at p. 753.)  The Court observed that in the attorney fees context, " 'courts generally treat the term "action," as defined by Code of Civil Procedure section 22, as referring to the *whole* of a lawsuit rather than to discrete proceedings within a lawsuit.' " (*Id.* at p. 753.)  Thus, the Court held that while the assertion of an affirmative defense is a " 'real *part of* an action,' " "it does not, in and of itself, constitute an 'action' for purposes of recovering attorney fees." (*Id.* at p. 753.)

Even though *Mountain Air* was decided in the attorney fees context, its holding that the assertion of a defense is not an action is also applicable in the arbitration context. We see no reason why the assertion of a defense should be considered an "action" in the arbitration context here when it is not so considered in the attorney fee context.  Indeed, the principles of contract interpretation are the same in both the attorney fees context and the arbitration context.  (*Mountain Air, supra,* 3 Cal.5th at p. 753 [determining whether attorney fees provision applies involves "traditional rules of contract interpretation"]; *Fleming v. Oliphant Financial, LLC* (2023) 88 Cal.App.5th 13, 21 [arbitration agreements "subject to same rules of construction as any other contract"].)  We also see no difference whether the defense is asserted as an affirmative defense or in the form of a denial; *Mountain Air*'s holding would apply just the same.

In sum, this is not an "action" to interpret IFG's operating agreement.

### B.     Not an action between members

Grapery also argues IFG's claims must be arbitrated because this is a dispute "between the Members or by and against any Member" of IFG.  It asserts that IFG's claims "are part of a broader dispute between" Pandol and other IFG members.  It acknowledges Pandol is not a named defendant in the complaint but contends IFG's claims are based on Pandol's conduct as a link between IFG and Grapery.  Grapery also

argues that IFG's filing of this action after Pandol commenced an arbitration proceeding to stop IFG's asset sale shows that IFG's other members are retaliating against Pandol. Grapery also asserts that had IFG sued Pandol, those claims would surely have to be arbitrated as a dispute "against any Member." Grapery contends this is why IFG has "strategically" not sued Pandol.

Grapery discusses this to show that even though IFG is the named plaintiff and Grapery the named defendant, the underpinning of this action is a feud between Pandol and the rest of IFG's members. But even were this true, it does not mean this is a dispute "between the Members" or "against any Member." Who the dispute is between is based on who the complaint lists as the parties, and the complaint names IFG and Grapery as the plaintiff and defendant, respectively. Neither Grapery nor IFG are members of IFG, so this is not a dispute between members or against any member. Grapery does not explain how we are allowed to look beyond the complaint's named parties to determine whether this action's impetus was a personal dispute between members, and if we determine it was, to declare this an arbitrable dispute "between members" or "against any member."

Grapery also directs attention to the fact that the operating agreement's first sentence lists "Jack J. Pandol, dba the Grapery" as one of the parties "enter[ing] into" the operating agreement.[5] Grapery asserts this makes Pandol and Grapery "equivalent." We observe that section 1.15 of the operating agreement provides that IFG's "Initial Members" are the entities listed in the operating agreement's first sentence. !(AA 72)! But this means only that Pandol was an Initial Member. The designation "DBA," short for "doing business as," signals use of a fictitious business name. (Bus. & Prof. Code, §

---

[5] The words "dba the Grapery" do not appear anywhere else in the operating agreement, including in the signature blocks at the bottom of the agreement where "JACK J. PANDOL" signed twice: once as a member and once as a manager. !(AA 90)!

12.

17900.)  Use of a fictitious business name does not create a separate legal entity.  (*Muddy Waters, LLC v. Superior Court* (2021) 62 Cal.App.5th 905, 920.)  Also, Grapery was not incorporated until after IFG was formed.  Thus, Grapery has always been a separate legal entity from Pandol; they are not "equivalent."

Grapery cannot compel arbitration of IFG's claims under the plain text of the arbitration clause.

## III.     Equitable estoppel

Grapery next argues that even if IFG's claims are not arbitrable under the plain text of the operating agreement, IFG should be equitably estopped from avoiding arbitration.  We disagree.

Under the equitable estoppel doctrine, a party to an arbitration agreement may be required to arbitrate with a nonparty.  (See *JSM Tuscany, LLC v. Superior Court (NMS Properties, Inc.)* (2011) 193 Cal.App.4th 1222, 1237.)  The doctrine applies in two circumstances:  (1) when the signatory must depend on the written agreement providing for arbitration in asserting claims against the nonsignatory; or (2) when the signatory alleges "substantially interdependent and concerted misconduct" by the nonsignatory and a signatory and the alleged misconduct is "founded in or intimately connected with the obligations of the underlying agreement."  (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 217—219 (*Goldman*).)  Neither circumstance is present here.

As to the first circumstance, IFG does not "depend on" the operating agreement "in asserting" any of its claims.  (*Goldman, supra,* 173 Cal.App.4th at p. 218.)  Indeed, IFG's claims for breaches of two confidentiality agreements, trade secret misappropriation, and unfair competition have nothing to do with the operating agreement.

As to the second circumstance, IFG is alleging wrongful conduct by Grapery that is neither "founded in [n]or intimately connected with the obligations [of] the [operating] agreement."  (*Goldman, supra,* 173 Cal.App.4th at pp. 218—219.)  Again, IFG is not

13.

alleging any breach of the operating agreement, and IFG's claims in no way implicate any operating agreement obligations. Grapery argues that IFG's claims are intimately connected with the operating agreement because the trial court must interpret the operating agreement to determine whether certain of its provisions provide Grapery a complete defense to the claims. But this misunderstands the scope of the inquiry. We look only at the allegations in IFG's complaint in determining whether IFG's claims are intimately connected to the operating agreement. (*Id.* at p. 219.) It is irrelevant if the operating agreement is later implicated by an asserted defense.

Grapery cites *Metalclad Corp. v. Ventana Environmental Organizational Partnership* (2003) 109 Cal.App.4th 1705 (*Metalclad*), to argue IFG's claims depend on the operating agreement. There, the appellate court ordered arbitration of a plaintiff's breach of contract and related claims against a nonsignatory defendant because the claims were "intimately founded in and intertwined with" the contract containing the arbitration clause. (*Id.* at p. 1717.) But *Metalclad* is distinguishable.

Metalclad, the plaintiff, entered into a stock purchase agreement to sell its subsidiary to Geologic, a subsidiary of defendant Ventana. (*Metalclad, supra,* 109 Cal.App.4th at pp. 1709—1710.) The stock purchase agreement included an agreement to arbitrate. (*Id.* at p. 1710.) Metalclad sued Ventana, Geologic and others for breach of contract, fraud, and other claims, and later dropped Geologic from the suit. (*Ibid.*) After its motion to compel arbitration was denied, Ventana appealed. (*Id.* at p. 1711.) The appellate court concluded that Ventana had successfully demonstrated its right to compel arbitration under Geologic's contract with Metalclad, even though Ventana was not a signatory. (*Id.* at pp. 1717—1719.) The appellate court concluded that Metalclad's tort claims against Ventana were " 'intimately founded in and intertwined with' " the underlying Geologic contract because Metalclad alleged that Ventana caused Geologic to breach the contract. (*Id.* at p. 1717.) Ventana's parent-

14.

subsidiary relationship with Geologic was thus an "integral relationship" in Metalclad's claims.  (*Id.* at pp. 1717—1718.)

Those facts are significantly different from the facts here.  The *Metalclad* plaintiff alleged that one defendant caused the other to breach the contract containing the arbitration clause, and the plaintiff's claims all stemmed from that alleged breach.  In contrast, IFG is not alleging a breach of the contract containing the arbitration clause— that is, the operating agreement—and none of IFG's claims against Grapery depend on the operating agreement at all.  Thus, IFG's claims are not " 'intimately founded in and intertwined with' " the contract containing the arbitration clause.

Unlike in *Metalclad*, this is not a situation where IFG seeks to rely on the terms of the operating agreement as the basis for its claims against Grapery while refusing to arbitrate its claims because Grapery is a nonsignatory.  We therefore conclude Grapery may not compel arbitration under equitable estoppel principles.

### *Alternative estoppel argument*

Grapery briefing posits an alternative estoppel argument.  It asserts that IFG "has repeatedly argued," to obtain the issuance of a third-party discovery subpoena to Grapery in Pandol's arbitration proceeding, that Grapery is a third-party beneficiary of the operating agreement.  Indeed, IFG argued in a motion for the issuance of the subpoena that "Grapery is a third-party beneficiary of the Operating Agreement and, thus, is subject to the arbitrator's power."  Grapery argues IFG should now be estopped from arguing Grapery is not a third-party beneficiary of the operating agreement.  This argument dovetails with Grapery's third-party beneficiary argument.

This contention is forfeited because it is under a heading in the opening brief which asserts only that IFG is equitably estopped from avoiding arbitration because its claims are intertwined with Pandol's rights and obligations under the operating agreement.  There is no heading anywhere in the opening brief contending that IFG should be estopped from taking inconsistent legal positions.  Legal arguments not

15.

included in the argument section of an appellant's opening brief *under appropriate headings* are forfeited. (Cal. Rules of Court, rule 8.204(a)(1)(B); see also *Pizarro v. Reynoso* (2017) 10 Cal.App.5th 172, 179 ["Failure to provide proper headings forfeits issues that may be discussed in the brief but are not clearly identified by a heading"].) This rule of appellate procedure is not a mere technicality. It "ensure[s] that opposing parties are fairly apprised of contentions so as to afford a full and fair opportunity to respond." (*Golden Door Properties, LLC v. County of San Diego* (2020) 50 Cal.App.5th 467, 555.)

Forfeiture aside, this argument fails on the merits. True, IFG argued in its motion for a subpoena that Grapery was a third-party beneficiary of the operating agreement because it was Pandol's "nominee" for licensing rights under the "Rights to New Varieties" provision. But IFG never asserted Grapery was a third-party beneficiary of the operating agreement's arbitration clause. As we have explained, even if Grapery were a beneficiary of the licensing provision, that does not mean it is a beneficiary under the entire operating agreement. Thus, it is immaterial for purposes of this issue that Grapery may be considered a beneficiary of the licensing provision. What matters is whether Grapery is a beneficiary under the arbitration clause, and Grapery cannot establish that it is.

## IV.    Third-party beneficiary

Grapery next contends the court erred in finding arbitration cannot be compelled under third-party beneficiary principles. We disagree.

A third party may enforce a contract made expressly for its benefit. (Civ. Code, § 1559.) To enforce a contract, the third party must establish these elements: (1) the third party would in fact benefit from the contract; (2) a motivating purpose of the contracting parties was to provide a benefit to the third party; and (3) permitting the third party to enforce the contract against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties.

16.

(*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830.)  The third party " 'bears the burden of proving that the promise he seeks to enforce was made to him personally or to a class of which he is member.' " (*Spinks v. Equity Residential Briarwood Apartments* (2009) 171 Cal.App.4th 1004, 1024.)

A third-party beneficiary may enforce only those terms of the contract that were made for its benefit.  (*Clark v. California Ins. Guarantee Assn.* (2011) 200 Cal.App.4th 391, 398.)  Thus, to compel arbitration of a dispute, the third party must show that the arbitration provision included in the contract, and not just some other part of that contract, was made expressly for the third party's benefit.  (*Fuentes v. TMCSF, Inc.* 26 Cal.App.5th 541, 552 (*Fuentes*).)

Grapery contends it is a third-party beneficiary of the operating agreement because of the "Rights to New Varieties" provision allowing Pandol to assign licensing rights to it.  Grapery also points to IFG's arguments in support of its request for the issuance of a discovery subpoena to Grapery in Pandol's arbitration proceeding, where IFG asserted Grapery was a third-party beneficiary to the operating agreement.  We note, however, that IFG did not specify which aspect of the agreement Grapery was a beneficiary of.  In any event, Grapery now asserts that IFG admitted in that motion that Grapery is a third-party beneficiary of the operating agreement.  We address this argument while ignoring the operating agreement's "No Third Party Beneficiary" clause in addressing Grapery's arguments.[6]

Even if Grapery were a third-party beneficiary under that part of the operating agreement, Grapery cannot compel arbitration because it has not shown that the

---

[6] We note that Grapery argues that this clause does not prohibit Grapery from being considered a third-party beneficiary.  Grapery cites authority for the proposition that a "generic no-third-party-beneficiaries" provision does not control over a specific provision giving rights to a third party.  But we need not address the no-third-party-beneficiary clause's effect.

arbitration clause was made expressly for its benefit.  (*Fuentes, supra,* 26 Cal.App.5th at p. 552.)  IFG's founders could have given Grapery arbitration rights under the operating agreement, but they did not.  Grapery's third-party beneficiary argument therefore fails.

Grapery's briefing overlooks a separate dispositive point.  Even if Grapery were a third-party beneficiary under the arbitration clause, it still could not compel arbitration of IFG's claims because "[f]or a nonsignatory to invoke an arbitration provision in an agreement based on a third party beneficiary theory, the nonsignatory beneficiary … must establish the agreement was applicable to the controversy."  (*Jones v. Jacobson* (2011) 195 Cal.App.4th 1, 22.)  As we earlier discussed, there is no nexus between the operating agreement, which contains the arbitration provision, and IFG's claims against Grapery.  Indeed, IFG's claims against Grapery have nothing to do with the operating agreement.  For this independent reason, the claims are not arbitrable under third-party beneficiary principles.

For all these reasons, we conclude Grapery cannot enforce the arbitration provision as a third-party beneficiary.

## DISPOSITION

The trial court's January 24, 2023, order denying Grapery's motion to compel arbitration is affirmed.  Respondent is awarded its costs on appeal.


SNAUFFER, J.

WE CONCUR:



SMITH, Acting P. J.



DE SANTOS, J.


18.