Filed 6/15/23  Tyler v. CSG Holdings CA CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| MARIE TYLER,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CSG HOLDINGS CA, LLC,<br><br>Defendant and Appellant. | F084615<br><br>(Super. Ct. No. 20CECG03461)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Fresno County.  Kimberly A. Gaab, Judge.

Sheppard Mullin Richter & Hampton, Gregg A. Fisch and Raymond J. Nhan for Defendant and Appellant.

Aiman-Smith & Marcy and John A. Lofton for Plaintiff and Respondent.

-ooOoo-

Defendant CSG Holdings CA, LLC (defendant or CSG Holdings) appeals from an order denying its motion to compel arbitration of plaintiff Marie Tyler's (plaintiff) wage-and-hour claims under the Labor Code.  The crux of the debate is whether CSG Holdings, plaintiff's former employer, can enforce the arbitration agreement that plaintiff signed at the start of her employment although CSG Holdings is not expressly identified as a party to that agreement.  We agree with the trial court that defendant cannot enforce the agreement because it is not a signatory, and because it did not satisfy either of the asserted grounds for nonsignatory enforcement.  We therefore affirm.

## FACTUAL BACKGROUND

CSG Holdings is a subsidiary of nonparty Cambridge Spa Group, LLC, which is a parent company to multiple entities.  CSG Holdings operates multiple massage businesses in California under the trade name Massage Envy.  Plaintiff was employed by CSG Holdings as a massage therapist from November 13, 2017, through approximately March 2020.  "As part of her onboarding with regard to her employment," on November 13, 2017, plaintiff signed at least two employment-related documents:  an arbitration agreement (Arbitration Agreement or Agreement) and a consent to waive meal period form (Meal Period Waiver).

The Arbitration Agreement bears no header or logo, other than its "Arbitration Agreement" title.  (Boldface, underlining & some capitalization omitted.)  The Agreement begins:  "We hope our employment relationship is mutually beneficial.  However, in the event of a dispute between you and Cambridge Spa Group (Company), you and the Company agree as follows . . . ."  As relevant here, the Agreement then provides "both you and the Company agree that any and all disputes arising out of or related to your employment or our relationship, including the terms and conditions of your employment, shall be submitted to final and binding arbitration."  As there is no dispute regarding the scope or interpretation of the Agreement's substantive terms, we do

2.

not detail its full provisions.  The important point is that the Agreement contains no reference to defendant by name (CSG Holdings CA, LLC).  The only purported entity identified is "Cambridge Spa Group," whose name appears in the Agreement's footer and in the opening section identifying the parties.  The Agreement is signed by plaintiff on the line designated for "Employee Signature" and by an unidentified person on the line designated for "Company Representative Signature."

By contrast, the Meal Period Waiver, which plaintiff completed on the same date as the Arbitration Agreement, references only "CSG Holdings CA, LLC," defendant's full legal name—once in the form's title and twice in its substantive provisions; it does not reference "Cambridge Spa Group."

Other than plaintiff's contemporaneous signing of these two documents "[a]s part of her onboarding," the record contains no details regarding the circumstances of plaintiff's hiring or onboarding.  There is no indication she signed any written employment agreement, and we are not told where or with whom she completed the Arbitration Agreement and Meal Period Waiver on her first day.  Nor was any evidence submitted as to what plaintiff might have been told regarding the variety of names of purported entities appearing on the documents she was signing.

As has come to light through the litigation of the instant motion to compel arbitration, "Cambridge Spa Group"—the only identified signatory of the Arbitration Agreement—is not a legal entity.[1]  Rather, it is a colloquialism sometimes used to refer to Cambridge Spa Group, LLC, defendant's parent company, and other times used as an umbrella term to refer to Cambridge Spa Group, LLC, *and its subsidiaries*, including defendant.  As described in the next section, defendant did not present the trial court with a consistent position on what exactly "Cambridge Spa Group" stood for.  However, it is

---

[1] To avoid confusion, we therefore continue to use quotation marks surrounding the name throughout this opinion.

undisputed that defendant CSG Holdings was plaintiff's only employer while she worked for Massage Envy.

## PROCEDURAL HISTORY

After leaving Massage Envy, plaintiff filed the present suit against defendant (and defendant only) on November 24, 2020. Her complaint asserts various wage-and-hour claims under the Labor Code and Business and Professions Code, as well as seeking penalties under the Private Attorneys General Act of 2004 (PAGA), Labor Code section 2698 et seq. The parties began discovery and in June 2021 stipulated to engage in mediation. However, by August 2021, defendant had decided to retain new counsel, and mediation did not proceed.

On August 17, 2021, defendant's new counsel filed a substitution-of-attorney form. The section for recording defendant's consent to the substitution bears the signature of one Ian Cahn-Fuller, who typed the name "Cambridge Spa Group" in the space next to his signature.

Around the same time, defendant's new counsel contacted plaintiff's counsel and presented the Arbitration Agreement for the first time. After some debate over whether the Agreement would apply, given its naming of "Cambridge Spa Group" rather than defendant's name, defendant on November 16, 2021, filed the instant motion to compel arbitration and to stay the PAGA claims.

Defendant took the position in its opening and reply briefs in support of its motion that "Cambridge Spa Group" referred to its closely related parent entity, and that defendant could enforce the Agreement based on their parent-subsidiary relationship.[2] For instance, defendant characterized the Agreement as stating "that [p]laintiff and

___

[2] Defendant's briefs at times referred to "Cambridge Spa Group" as "Cambridge Spa Group, Inc.," rather than Cambridge Spa Group, LLC.

4.

Cambridge Spa Group (the parent company of CSG [Holdings]) agree to arbitrate" the present dispute.

Defendant attached the declaration of Cahn-Fuller, who identified himself as "the Chief Financial Officer of Cambridge Spa Group, LLC, parent company to defendant CSG Holdings CA, LLC." Cahn-Fuller averred that Cambridge Spa Group, LLC is the parent company to defendant (and multiple other entities); that in preparing his declaration he had reviewed defendant's employee personnel files; and that defendant was plaintiff's only employer when she worked for Massage Envy. He further averred that "[a]s part of her onboarding with regard to her employment with [defendant], [plaintiff] signed a number of employment-related documents," including the Arbitration Agreement and the Meal Period Waiver described above. He also mentioned and attached a new hire rate agreement that plaintiff signed in January 2018—about two months into her employment—and her performance review documents from February 2019 and March 2020.

In opposition, plaintiff argued in relevant part that (1) the motion to compel was not properly before the court because the substitution-of-attorney form was ineffective due to its execution by a representative of "Cambridge Spa Group" rather than defendant; and (2) defendant could not enforce the Arbitration Agreement because it was between plaintiff and nonparty "Cambridge Spa Group," which was never plaintiff's employer.

Upon receiving the briefs, the trial court permitted the parties to submit supplemental briefs on " 'the issue of Cambridge Spa Group's authority to consent to the substitution of attorney . . . on defendant's behalf.' " The parties filed simultaneous supplemental briefs and declarations on the substitution-of-counsel issue. Defendant argued its substitution-of-attorney form was properly filed in part because "Cambridge Spa Group is the colloquial name for a family of companies under the same ownership, specifically including [defendant]." Defendant provided a supplemental declaration by Cahn-Fuller, who averred that he had "worked continuously for Cambridge Spa Group

5.

since in or about March 2019," and that—in addition to serving as the chief financial officer of Cambridge Spa Group, LLC—he was a member of defendant CSG Holding's board of directors with actual authority to sign documents on behalf of defendant. His supplemental declaration concludes with the following paragraph:

> "At various times and in many documents, including employment-related documents, the phrase 'Cambridge Spa Group' is used as a colloquial name to refer to Cambridge Spa Group, LLC and its subsidiaries, specifically including CSG Holdings CA, LLC [defendant]. Such can be seen, as illustrative examples, on some of the documents I previously presented to the Court as Exhibits to my earlier Declaration."

The trial court issued a tentative ruling denying the motion, which it then adopted as its final ruling after a hearing. The court first briefly addressed the substitution-of-counsel issue, finding that Cahn-Fuller's declaration confirmed that he had authority to sign the substitution-of-attorney form on defendant's behalf—thereby making the substitution effective. As to the substance of the motion to compel arbitration, the trial court concluded that defendant lacked the power to enforce the Arbitration Agreement because (1) defendant was not a party to the Agreement and lacked express authority to enforce it, and (2) defendant could not successfully invoke equitable estoppel or the third party beneficiary doctrine as grounds for nonsignatory enforcement.

As to express authority, the trial court found that plaintiff entered the Arbitration Agreement "with Cambridge Spa Group, the parent company of defendant and not a party in the action."[3] The court reasoned that the Agreement identified the " 'Company' " as referring to "Cambridge Spa Group"; did not name plaintiff's "actual employer," defendant CSG Holdings; was not signed by defendant; and did not contain language extending its applicability to agents, subsidiaries, or affiliates of "Cambridge Spa Group." Further, "[t]o the extent that defendant [was] implying that it and

---

[3] As discussed in the analysis below, the trial court's order refers exclusively to "Cambridge Spa Group" as the contracting entity, not Cambridge Spa Group, LLC.

6.

Cambridge Spa Group, as separate entities, may be used interchangeably in the [A]rbitration [A]greement, there [was] no support for this implication," because substituting one entity for the other would violate the principle against reading additional terms into unambiguous contracts.

As to enforcement by a nonsignatory, the trial court first rejected defendant's equitable estoppel theory. The court reasoned that none of plaintiff's claims were inextricably bound up or intertwined with the Arbitration Agreement because "the scope of the written agreement [was] limited to the relationship between plaintiff and Cambridge Spa Group." And, since plaintiff was primarily seeking relief for violations of the Labor Code, it could not be said that plaintiff was benefiting from the Agreement.

The trial court also rejected defendant's argument that it could enforce the Agreement as a third party beneficiary. The court reasoned that defendant "failed to prove that plaintiff and Cambridge Spa Group mutually intended to benefit defendant," given the lack of any express indication of that purpose in the Agreement. The trial court therefore denied the motion, and this appeal followed.

## DISCUSSION

### I.    STANDARDS OF REVIEW

"Absent conflicting evidence, we review de novo the trial court's interpretation of an arbitration agreement," including its determination of whether a valid agreement to arbitrate was formed. (*Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1120; see *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978 (*Juen*).) "Where the trial court's ruling is based on a finding of fact, we review the decision for substantial evidence." (*Trinity*, at p. 1121.) "However, '[w]hen, as here, the court's order denying a motion to compel arbitration is based on the court's finding that [the movant] failed to carry its burden of proof, the question for the reviewing court is whether that finding was erroneous as a matter of law.' " (*Ibid*., second brackets added.)

7.

When applying that standard, the question is " 'whether the appellant's evidence was (1) "uncontradicted and unimpeached" and (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Juen*, at p. 979.)

## II.    ENFORCEMENT AS A PARTY TO THE CONTRACT

### A.  *Relevant Law*

Code of Civil Procedure section 1281.2 requires trial courts to order arbitration of a controversy "[o]n petition of *a party to an arbitration agreement* alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate such controversy . . . if it determines that an agreement to arbitrate the controversy exists." (Italics added.)  An arbitration agreement must be in writing to be valid and enforceable.  (Code Civ. Proc., § 1281.)  Thus, a threshold question in any motion to compel arbitration is whether the movant is a party to the arbitration agreement being invoked.  (See *Cruise v. Kroger Co.* (2015) 233 Cal.App.4th 390, 396; *M & M Foods, Inc. v. Pacific American Fish Co., Inc.* (2011) 196 Cal.App.4th 554, 559.)

The party seeking arbitration bears the burden of proving the existence of an arbitration agreement between the parties by a preponderance of the evidence.  (*Juen*, *supra*, 32 Cal.App.5th at p. 978.)  An arbitration agreement "is construed like other contracts to give effect to the intention of the parties," and ordinary rules of contract interpretation apply.  (*Mendoza v. Trans Valley Transport* (2022) 75 Cal.App.5th 748, 764.)  Mutual intent " ' "is to be inferred, if possible, solely from the written provisions of the contract." ' " (*Fuentes v. TMCSF, Inc.* (2018) 26 Cal.App.5th 541, 549; see Civ. Code,[4] § 1639.)  However, a contract "may be explained by reference to the circumstances under which it was made, and the matter to which it relates."  (§ 1647.)

---

[4] All further statutory references are to the Civil Code unless otherwise stated.

8.

"An essential element of any contract is the consent of the parties, or mutual assent, which must be communicated by each party to the other." (*Mendoza v. Trans Valley Transport*, *supra*, 75 Cal.App.5th. at p. 777; see § 1565, subd. 3.) " 'Mutual assent is determined under an objective standard applied to the outward manifestations or expressions of the parties, i.e., the reasonable meaning of their words and acts, and not their unexpressed intentions or understandings.' " (*Martinez v. BaronHR, Inc.* (2020) 51 Cal.App.5th 962, 967; see *Reigelsperger v. Siller* (2007) 40 Cal.4th 574, 579 ["uncommunicated subjective intent is irrelevant" to mutual assent].)

### B. Analysis

The parties to the action do not dispute the scope of the Arbitration Agreement, but rather the identity of the parties to the Agreement. Defendant offers two general arguments for why the trial court should have found it an express party to the Agreement. We address each in turn.

#### 1. "Cambridge Spa Group" as an Umbrella Term

Defendant's initial argument is that the trial court erred by not treating it as an express party to the contract based on Cahn-Fuller's supplemental declaration that "Cambridge Spa Group" is a colloquial name used to refer to Cambridge Spa Group, LLC *and its subsidiaries*, including defendant.

The first problem with this argument is that it was never presented to the trial court. Indeed, defendant attempts to fault the trial court for findings that defendant itself urged upon the court in the briefing below. Defendant argues the trial court "mistakenly conclud[ed]" (1) that "Cambridge Spa Group" is the parent company of defendant and (2) that "Cambridge Spa Group" and defendant are different entities. But defendant told *the trial court* "that [p]laintiff and Cambridge Spa Group (the parent company of [defendant] CSG [Holdings]) agree[d] to arbitrate" the present dispute under the Agreement. This statement reflects defendant's position below that "Cambridge Spa Group" meant its parent company Cambridge Spa Group, LLC, and that defendant could

enforce the Agreement based on the two entities' parent-subsidiary relationship. Defendant never argued, as it now does, that the words "Cambridge Spa Group" in the Agreement expressly embrace defendant (among other subsidiaries of Cambridge Spa Group, LLC). Although the trial court began its analysis by confirming that defendant was not an express signatory of the Agreement, defendant's opening and reply briefs in support of the motion actually appear to concede defendant's status as a nonsignatory— focusing entirely on its ability to enforce the Agreement under principles of equitable estoppel. For instance, defendant argued in its opening brief that it was "immaterial" that the Agreement named "Cambridge Spa Group" rather than defendant because "basic principles of estoppel permit [defendant] to enforce the Agreement."

Defendant offered the Cahn-Fuller supplemental declaration only after the substantive briefing was complete, and only as evidence of Cahn-Fuller's authority to sign the substitution-of-attorney form. Defendant simply never before offered its current theory that it should be treated as an express signatory of the Agreement because "Cambridge Spa Group" is used as a colloquial name to refer to Cambridge Spa Group, LLC and its subsidiaries, which include defendant. "Appellate courts will generally not consider new theories raised for the first time on appeal." (*RN Solution, Inc. v. Catholic Healthcare West* (2008) 165 Cal.App.4th 1511, 1518.) We exercise our discretion to address the merits of defendant's new argument only to point out its substantive flaws.

Defendant's new emphasis on the Cahn-Fuller supplemental declaration is also misplaced because that declaration is not as definitive as defendant makes it out to be. Defendant focuses on Cahn-Fuller's statement that "the phrase 'Cambridge Spa Group' is used as a colloquial name to refer to Cambridge Spa Group, LLC and its subsidiaries, specifically including CSG Holdings CA, LLC [defendant]." But the beginning of that sentence reads: "At various times and in many documents, . . . ." It does not say that "Cambridge Spa Group" *always* or *usually* means both Cambridge Spa Group, LLC and its subsidiaries. In fact, Cahn-Fuller used the phrase to mean only Cambridge Spa Group,

10.

LLC (not its subsidiaries) in the second paragraph of the same declaration when he stated he had "worked continuously for Cambridge Spa Group since in or about March 2019." The most that can be taken from the newly emphasized portion of the Cahn-Fuller supplemental declaration is that the name "Cambridge Spa Group" sometimes means a singular entity and sometimes means numerous related entities. The declaration contains no statement of which meaning that name was intended to carry in the Arbitration Agreement, and even if it did, there is no indication that such intent was conveyed to plaintiff at or before the time of signing.

Notwithstanding defendant's contrary arguments in the trial court, it is now clear there is no such entity as "Cambridge Spa Group." However, that does not mean the record compels a finding for defendant as a matter of law. As just discussed, the ambivalence of the Cahn-Fuller supplemental declaration leaves plenty of room to find it insufficient to support defendant's proffered position that it is a literal party to the Agreement. (See *Juen*, *supra*, 32 Cal.App.5th at p. 979 [to overturn conclusion that a party failed its burden of proof, the appellant's evidence must " ' "leave no room for a judicial determination that it was insufficient to support a finding" ' "].) In addition, defendant's interpretation would lead to the absurd result that plaintiff must have agreed to arbitrate all disputes with *any and all* of Cambridge Spa Group, LLC's "multiple" subsidiaries. Although defendant was undisputedly plaintiff's only employer, the Agreement could arguably extend to nonemployment disputes because it applies to "any and all disputes arising out of or related to your employment *or our relationship*." (Italics added.)

Defendant counters that by finding plaintiff entered the Agreement with "Cambridge Spa Group," a nonexistent entity, the trial court "essentially voided the Agreement" because in that event no one could enforce the Agreement. This, defendant says, violated the maxim that unclear contracts should be interpreted in a way to make them valid. (See § 3541.) In the first place, the trial court's statement that plaintiff

11.

entered the Agreement "with Cambridge Spa Group, the parent company of defendant" makes clear it was finding plaintiff entered the Agreement with Cambridge Spa Group, LLC, an actual entity which could enforce the Agreement should a dispute with plaintiff "related to . . . [their] relationship" arise. Moreover, we are not persuaded that the rule of construction favoring interpretation of contract terms so as to give effect to the mutual intent *of the parties* applies in determining *who the parties are*.

We agree with the trial court that the face of the Agreement does not identify defendant as a signatory to the Agreement.

### 2. Content and Context

Defendant's second argument for its express authority to enforce the Agreement is that the subject matter and the circumstances of the execution make defendant the reasonably identifiable counterparty to the Agreement. For this argument, defendant relies entirely on an unpublished, federal case from the Eastern District of Virginia, *Cullen v. Hall Auto., LLC* (E.D.Va. Jan. 7, 2022, No. 2:21-cv-00047) 2022 U.S.Dist. Lexis 77833 [2022 WL 1561227] (*Cullen*), report and recommendation adopted, *Cullen v. Hall Auto., LLC* (E.D.Va. Apr. 28, 2022) 2022 U.S.Dist. Lexis 77743 [2022 WL 1262549]. In *Cullen*, the district court adopted a magistrate judge's recommendation to grant the employer defendant's motion to compel arbitration based on an arbitration agreement despite the agreement listing a "corporate moniker" ("MileOne Automotive") as "The Company," rather than the employer's legal name (Hall Automotive, LLC). (2022 U.S.Dist. Lexis 77833 at pp. *3-*8, *19-*22.) In an extensive report and recommendation, the magistrate judge concluded that MileOne—a trademark owned by the employer's parent company (*id.* at pp. *7-*8)—was "a generic descriptor for The Company that was the other party," that the moniker "unambiguously referenced [the plaintiff]'s employer, and [the plaintiff] knew she was signing the [a]rbitration [a]greement as a condition of her employment" (*id.* at p. *26). Both the magistrate judge

12.

and the district judge adopting the recommendation relied on (1) the agreement's terms being explicitly related to employment, (2) the circumstances of the plaintiff's signing the agreement during her first week, alongside four other new-hire documents that all identified MileOne, and (3) Virginia law excusing formal naming of contracting parties "if the party 'can be identified with reasonable certainty' " (*id.* at p. *25). (See *id.* at pp. *4–*6, *19–*24; *Cullen v. Auto., LLC*, *supra*, 2022 U.S.Dist. Lexis 77743 at pp. *6–*9.) The court held the employer, though not named, "was identified as a signatory to the agreement through the context and content of the agreement." (*Cullen v. Hall Auto., LLC*, *supra*, 2022 U.S.Dist. Lexis 77743 at p. *7; see *Cullen*, *supra*, 2022 U.S.Dist. Lexis 77833 at pp. *22–*24.)

We decline to follow *Cullen*'s reasoning here both because the circumstances of plaintiff's hiring and onboarding are less clear in this case and because we are not convinced that California law mirrors Virginia law in excusing the formal naming of parties to contracts. Taking the latter point first, the cases the parties cite do not persuade us one way or the other as to whether failure to formally identify the parties to a contract is fatal under California law. *Flores v. Nature's Best Distribution, LLC* (2016) 7 Cal.App.5th 1, which plaintiff cites, is distinguishable because the arbitration agreement there included no name or definition whatsoever for the employer company, with a totally blank signature block; and it also failed to define what disputes would be subject to arbitration or the rules for arbitrating such disputes. (*Id.* at pp. 9–10.) Defendant's cases, on the other hand, both involve claims for breach of a land sale contract and apply the rule that *to satisfy the statute of frauds*, the contract must be evidenced by a writing " ' "which states with reasonable certainty . . . each party to the contract" ' " as well as the material terms of the agreement. (*Burge v. Krug* (1958) 160 Cal.App.2d 201, 207, italics omitted; see *Sterling v. Taylor* (2007) 40 Cal.4th 757, 772–773 [holding that it did not violate the statute of frauds for the memorandum of the contract to omit the name of the seller's partnership where it included the name of the

13.

general partner who was the partnership's authorized agent].) The sufficiency of a writing for purposes of the statute of frauds is distinct from the sufficiency of a contract itself, in terms of identifying the parties, and we deem it unnecessary to embark on independent research to resolve this issue in light of the factual distinctions between this case and *Cullen*.

Although the content of the Arbitration Agreement is undisputedly "geared toward employment," as in *Cullen*, *supra*, 2022 U.S.Dist. Lexis 77833 at page *21, the few circumstances we know of plaintiff's signing do not "establish that the other signatory to [the Agreement] was necessarily [her] employer," defendant CSG Holdings (*id.* at p. *24). The only record evidence regarding the context of plaintiff signing the Agreement is that she signed it on her first day of work "[a]s part of her onboarding" with defendant, and that she also signed the Meal Period Waiver the same day. We are not told where or with whom plaintiff completed these forms, nor even who countersigned the Arbitration Agreement on the line designated for "Company Representative Signature." Unlike in *Cullen*, *supra*, 2022 U.S.Dist. Lexis 77833, and as discussed in more detail in the estoppel section below, there is no affirmative evidence that plaintiff "knew she was signing the Arbitration Agreement as a condition of her employment" with defendant. (*Id.* at p. *26.) Nor is there any evidence that plaintiff knew *at the time of signing* exactly who her employer was. (Cf. *Cullen v. Hall Auto., LLC*, *supra*, 2022 U.S.Dist. Lexis 77743 at p. *8 [describing plaintiff's deposition testimony as stating she "had no doubts about the entity who was her employer"].) In contrast to the plaintiff's contemporaneous signing of five onboarding documents which all referenced the MileOne trademark in *Cullen*, here plaintiff signed just two documents at the start of her employment—the Arbitration Agreement and the Meal Period Waiver—and each of them identified a different entity (or purported entity). The Arbitration Agreement only referenced "Cambridge Spa Group," and the Meal Period Waiver only referenced "CSG Holdings CA, LLC," defendant's legal name. The other employment-related documents

14.

attached to the original Cahn-Fuller declaration—plaintiff's January 2018 new hire rate agreement and her performance review documents from 2019 and 2020—were not part of plaintiff's November 2017 onboarding and do not bear upon her knowledge of her employing entity at the time she signed the Arbitration Agreement.[5]

At oral argument, defendant argued almost exclusively that we should not be concerned with the Agreement's ambiguity in identifying the countersigning entity because the Agreement is unambiguous about its subject matter: the mandatory arbitration of any disputes "arising out of or related to [plaintiff's] employment." According to defendant, this compels the conclusion that it—plaintiff's undisputed, sole employer—must be able to enforce the Agreement, either as an express party to the contract or as a third party beneficiary of the contract. We address the third party beneficiary angle below, and we do not accept defendant's contention that the Agreement's subject matter dictates the identification of its signatories.

A relatively recent Ninth Circuit decision, which neither side mentions, supports our reticence to let surrounding circumstances and subject matter dictate party identification. (See *Ahlstrom v. DHI Mortg. Company, Ltd., L.P.* (9th Cir. 2021) 21 F.4th 631.) In *Ahlstrom*, the Ninth Circuit—applying California law—held that an arbitration agreement "plainly drafted to govern an employer-employee relationship" (*id*. at p. 635)

---

[5] The day before oral argument, defendant provided notice of supplemental authority, directing us to the Second Appellate District's recent decision in *Alberto v. Cambrian Homecare* (2023) 91 Cal.App.5th 482. Defendant argues the portion of the case upholding the trial court's decision under section 1642 to construe together two separate agreements signed on the same day as separate aspects of a single primary transaction (the plaintiff's hiring) supports defendant's argument here that we should read the Arbitration Agreement alongside the other employment documents plaintiff signed. As just explained, here the only two documents executed on the same day as part of plaintiff's onboarding were the Arbitration Agreement and the Meal Period Waiver. The Meal Period Waiver has nothing to do with the issue addressed by the Arbitration Agreement—how to resolve disputes arising from plaintiff's employment—and we decline to impute its references to CSG Holdings into the Arbitration Agreement.

15.

and signed as part of the plaintiff's onboarding could not be enforced by the plaintiff's actual employer (the defendant) because the agreement identified the employer's nonparty parent company as the only signatory and nowhere referenced the plaintiff's actual employer (*id.* at pp. 633, 635–636).  Instead of imputing the employer's name into the arbitration agreement based on its coverage of employment matters and the plaintiff having signed it during his onboarding (like the court did in *Cullen*, *supra*, 2022 U.S.Dist. Lexis 77833), the Ninth Circuit concluded there was no properly formed agreement to arbitrate because the agreement as drafted governed a relationship between the plaintiff and the nonparty parent company that did not exist.  (*Ahlstrom*, at p. 636.) The court of appeals also refused to treat the agreement's listing of the parent company as impliedly encompassing its subsidiaries and thereby identifying the plaintiff's actual employer.  (*Ibid.*)  Of course, the present case is distinct in that the Arbitration Agreement lists a colloquial name, not a true legal entity, as the counterparty.  However, *Ahlstrom* still supports our view that the surrounding circumstances and general tenor of an arbitration agreement are of limited relevance in determining its signatories.

In sum, we find no basis to overturn the trial court's conclusion that defendant lacks express authority to enforce the Arbitration Agreement because it is not a party to that agreement.

III.     ENFORCEMENT AS A NONSIGNATORY

Having concluded that defendant is not a signatory to the Arbitration Agreement, we now turn to defendant's arguments that it can nonetheless enforce the Agreement as a nonsignatory.  Because the only issue before us is whether defendant can enforce the Agreement, we do not decide whether the Agreement was improperly formed or void by virtue of naming a nonexistent entity ("Cambridge Spa Group") as the counterparty.  For the sake of the arguments in this section, however, we assume the Agreement was formed between plaintiff and Cambridge Spa Group, LLC, defendant's parent company.

16.

In general, a nonsignatory to an arbitration agreement lacks standing to enforce it. (*Cohen v. TNP 2008 Participating Notes Program, LLC* (2019) 31 Cal.App.5th 840, 856.)  However, there are certain limited circumstances in which a nonsignatory may still enforce such an agreement (or be bound by it).  (See *Jensen v. U-Haul Co. of California* (2017) 18 Cal.App.5th 295, 300 [listing six theories].)  Defendant here asserts two theories of nonsignatory enforcement, each of which we—like the trial court—reject.

## A.  *Third Party Beneficiary Theory*

A nonsignatory may enforce an arbitration agreement as a third party beneficiary if it establishes (1) it "would in fact benefit from the contract," (2) "a motivating purpose of the contracting parties was to provide a benefit to [it as a] third party," and (3) permitting it to enforce the contract would be "consistent with the objectives of the contract and the reasonable expectations of the contracting parties."  (*Goonewardene v. ADP, LLC* (2019) 6 Cal.5th 817, 830.)  The contracting parties' motivating purpose, or intent, to benefit the third party must appear expressly in the contract.  (§ 1559; see *Jarboe v. Hanlees Auto Group* (2020) 53 Cal.App.5th 539, 550 [noting third party's burden to prove that the contract was "made expressly for [the third party's] benefit" (italics omitted)]; see also *Goonewardene*, at p. 830 [clarifying that "intent-to-benefit case law remains pertinent" to the second element].)  The contract need not specifically name the third party; it is enough if the third party is a member of a class of persons for whose benefit the contract was made.  (*Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 838–839.)  In any event, however, "the contracting parties must clearly manifest their intent to benefit the third party."  (*Kalmanovitz v. Bitting* (1996) 43 Cal.App.4th 311, 314.)  It is not enough to simply show the contracting parties knew "that a benefit to the third party may follow from the contract."  (*Goonewardene*, at p. 830.)

Defendant's arguments for its standing as a third party beneficiary mirror its arguments for why it should be viewed as an actual signatory.  Again, we decline to

17.

permit enforcement of the Arbitration Agreement based solely on the Agreement's general subject matter, the circumstances of its signing, and an ambivalent declaration that "Cambridge Spa Group" sometimes refers to both defendant's parent company and the parent company's subsidiaries.

It would have been easy for Cambridge Spa Group, LLC to draft the agreement in a way that would expressly demonstrate the parties' intent, or motivating purpose, to benefit defendant. For example, in *Fuentes v. TMCSF, Inc.* (2018) 26 Cal.App.5th 541, the arbitration clause specified that it applied not only to the signatory entity but also to the signatory's " 'successors, assigns, parents, subsidiaries, or affiliates and/or any employees, officers, directors, agents.' " (*Id.* at p. 549.) The *Fuentes* court recognized this as a "list of intended third party beneficiaries" but rejected the nonsignatory's standing argument because the nonsignatory did not fall within any of these categories. (*Id.* at p. 552.) Here, the Arbitration Agreement does not include any similar list of categories of entities or persons who might invoke its benefits.

Defendant argues, however, that the Agreement's coverage of disputes arising from plaintiff's *employment* means that the parties necessarily contemplated enforcement by plaintiff's employ*er* (defendant). This argument stretches the third party beneficiary doctrine too far and lacks support in the cases defendant cites. For instance, in *Macaulay v. Norlander* (1992) 12 Cal.App.4th 1, the Court of Appeal held that an "introducing broker" had standing as a third party beneficiary to enforce an arbitration agreement executed by a "clearing broker" and a stock investor, despite the introducing broker not being named in the agreement. The court did not come to this conclusion because of the arbitration agreement's coverage of claims arising from brokerage transactions and the movant's broker status. Rather, contrary to defendant's present assertion in its reply brief, the court rested its holding on the arbitration agreement's specific mention and incorporation of claims against introducing brokers such as the movant in that case. (*Macaulay*, pp. 7–8 & fn. 2.) Indeed, the *Macaulay* court emphasized the need to

18.

"scrutinize the language in the closing broker's agreement to determine whether it selectively includes or excludes the introducing broker from the arbitration provision." (*Id.* at p. 8.) Although the present case does not involve brokerage agreements, this mandate to find a textual anchor for third party beneficiary status applies across the spectrum of contracts. While the contract need not specifically name the purported beneficiary, the prospective beneficiary must do more than show that the contract was directed to matters that it might wish to enforce in the future.

Like the trial court here, we find no manifest expression of an intent to benefit defendant, and therefore defendant cannot enforce the Arbitration Agreement as a third party beneficiary.

### B. Equitable Estoppel Theory

Turning to defendant's second and final alternative theory, equitable estoppel generally precludes a party from asserting her rights against another " ' "when [her] own conduct renders assertion of those rights contrary to equity." ' " (*Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 220.) In the arbitration context, the equitable estoppel doctrine "applies only if the plaintiff['s] claims against the nonsignatory are [(1)] dependent upon, or [(2)] inextricably bound up with, the obligations imposed by the contract [the] plaintiff has signed with the signatory." (*Id.* at pp. 229–230; see *id.* at pp. 218–219.) The doctrine's underlying policy is that " 'a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate' " under that contract. (*Jarboe v. Hanlees Auto Group*, *supra*, 53 Cal.App.5th at p. 552.)

As to the first scenario, plaintiff's causes of action against defendant do not depend or rely upon the terms or obligations of the Arbitration Agreement. (See *Goldman v. KPMG, LLP*, *supra*, 173 Cal.App.4th at p. 218.) Plaintiff's claims are not based on the Arbitration Agreement at all, but rather based on her former employment relationship with defendant. Defendant cites no term of the Arbitration Agreement having any bearing on the substance of plaintiff's allegations. (See *id.* at p. 230 [making

19.

the same observation].)  Therefore, "the basis for equitable estoppel—relying on an agreement for one purpose while disavowing the arbitration clause of the agreement—is completely absent." (*Ibid.*)

Nonetheless, even when a claim does not expressly rely on the underlying agreement, estoppel may still be found equitable under the second scenario in which the claims against a nonsignatory are "inextricably bound up with . . . the obligations imposed by the contract [the] plaintiff has signed with the signatory." (*Goldman v. KPMG, LLP*, *supra*, 173 Cal.App.4th at pp. 229–230.)  In the employment context, courts have estopped plaintiffs from avoiding arbitration with nonsignatory defendants who are sued alongside a signatory defendant.  (See *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782, 786–788 [the plaintiff asserting Lab. Code violations against the employer signatory staffing company was equitably estopped from avoiding arbitration with the nonsignatory codefendant company where he was assigned to work]; *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262, 272 [where the plaintiff's claims relied on and assumed the existence of the employment agreement he signed with his original employer, the plaintiff was estopped from avoiding arbitration with the nonsignatory codefendant successor employer].)  In both *Garcia* and *Boucher*, estoppel was warranted because each plaintiff's Labor Code claims "presumed the existence of the employment agreement with the signatory defendant." (*Garcia*, at p. 787 [analogizing to *Boucher*].)

Here, plaintiff's claims of course presume the existence of an employment relationship with defendant, since she is alleging wage-and-hour violations; but her claims do not presume the existence of an employment *agreement* with defendant that included an agreement to arbitrate all disputes between them.  Assuming (as we do for purposes of this argument) the only signatories to the Arbitration Agreement were plaintiff and Cambridge Spa Group, LLC, there is simply no showing that plaintiff's present suit against CSG Holdings is founded upon or intertwined with that Agreement. This case is distinct from *Garcia v. Pexco, LLC*, *supra*, 11 Cal.App.5th 782 and *Boucher*

20.

*v. Alliance Title Co., Inc.*, *supra*, 127 Cal.App.4th 262 because the lone corporate signatory to the Arbitration Agreement—Cambridge Spa Group, LLC—is a company with whom plaintiff does not claim to have any employment relationship whatsoever. We believe this is why the trial court, in a portion of its estoppel analysis, observed that the Arbitration Agreement's "scope . . . [was] limited to the relationship between plaintiff and Cambridge Spa Group." As defendant correctly notes, the equitable estoppel doctrine would serve no purpose if it were foreclosed by the absence of the moving defendant's signature on the underlying contract. However, we understand the trial court to have been focusing—not on defendant's nonsignatory status—but rather on the lack of demonstrable connection between plaintiff's employment with defendant (on the one hand) and her agreement to arbitrate with Cambridge Spa Group, LLC (on the other).

Defendant attempts to manufacture this missing connection by arguing that, regardless of the signatories, the Arbitration Agreement "formed one of the basic terms of [plaintiff's] employment"; and therefore she should not be permitted to avoid arbitration of her employment claims, having benefited from her period of employment. We are not persuaded. Although defendant repeatedly argued—both in its briefs and at oral argument—that plaintiff was required to sign the Agreement as a condition of her employment with defendant, there is no actual record evidence that this was so. According to defendant's reply brief, "[t]he evidence in the record shows that, had [p]laintiff not signed the Arbitration Agreement, she would not have received employment with [defendant], and, thus, the underlying dispute, and, in turn, this lawsuit, would not exist." The only record citation defendant provides is to the second paragraph of the original Cahn-Fuller declaration, which merely states that Cahn-Fuller reviewed defendant's employee personnel files. Paragraph four of that declaration comes slightly closer, stating: "As part of her onboarding with regard to her employment with [defendant], [plaintiff] signed a number of employment-related documents, including" the Arbitration Agreement and the Meal Period Waiver. However, this by no means

21.

states that plaintiff's employment was *contingent upon* her signing the Arbitration Agreement. We are unwilling to assume the Arbitration Agreement constituted a basic term of plaintiff's employment based solely on the arguments of counsel.

Defendant analogizes this case to *Marenco v. DirecTV LLC* (2015) 233 Cal.App.4th 1409 where, it argues, the plaintiff was estopped from avoiding arbitration of her claims against a successor employer who had bought out her original employer. The analogy falls flat because, first, we agree with plaintiff that *Marenco* was decided primarily on implied consent as opposed to equitable estoppel grounds. Although *Marenco* discusses estoppel principles midway through its analysis (*id*. at pp. 1419–1420), the court's actual holding was that the plaintiff's "continued employment with [the successor company] served as his implied consent to preserving the original terms of employment, including the arbitration agreement" signed with his original employer (*id.* at p. 1420). This constituted the plaintiff's implied-in-fact acceptance of the agreement assumed by the successor employer. (*Id.* at p. 1418.) In our case, there was no similar change of employers such that plaintiff's continued work for defendant would have any bearing. Second, even assuming *Marenco*'s holding rested on equitable estoppel grounds, in *Marenco* "there [was] no doubt that the agreement formed one of the terms of [the plaintiff]'s employment." (*Id.* at p. 1419.) The same cannot be said here.

We note part of the difficulty for defendant is that we are dealing here with a stand-alone arbitration agreement, as opposed to an arbitration clause within a broader employment agreement. It is easier to make the case for equitable estoppel when there is a broader agreement containing an arbitration clause because it will generally be clearer that the plaintiff is attempting to gain the benefits of the contract (by bringing suit) while not honoring its arbitration provision. (See, e.g., *Boucher v. Alliance Title Co., Inc.*, *supra*, 127 Cal.App.4th at p. 272 ["a party may not make use of a contract containing an arbitration clause and then attempt to avoid the duty to arbitrate"].) However, our

decision is not based on the fact of the Arbitration Agreement's existence separate from any broader employment contract. It is simply based on the lack of any unfairness shown on this record in permitting plaintiff to proceed with her claims in court. (See *Jarboe v. Hanlees Auto Group*, *supra*, 53 Cal.App.5th at p. 555 ["the linchpin of the estoppel doctrine is fairness"].) Defendant has not demonstrated that plaintiff's employment was predicated on her signing the Arbitration Agreement such that she enjoyed its benefits and must be estopped from attempting to avoid a resulting duty to arbitrate.

## DISPOSITION

The order denying defendant's motion to compel arbitration is affirmed. Plaintiff is awarded her costs on appeal.


DETJEN, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


SMITH, J.

23.