Filed 6/18/24

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| NELIDA SOLTERO, | D083308 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. CIVSB2203669) |
| PRECISE DISTRIBUTION, INC., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Bernardino County, David Cohn, Judge. Affirmed.

OZ Law Group, Greg Ozhekim, and Susan K. Laffer for Defendant and Appellant.

Gonzalez Weerasuriya and Suren N. Weerasuriya for Plaintiff and Respondent.

Precise Distribution, Inc. (Precise) appeals from an order denying its motion to compel arbitration of an employment action brought against it by Nelida Soltero, who previously worked in a Precise distribution warehouse. Precise argues the trial court should have compelled arbitration under the terms of an arbitration agreement between Soltero and Real Time Staffing Services, LLC (Real Time), a temporary staffing agency that placed Soltero

with Precise as a temporary worker. Real Time itself is not a party to the lawsuit. We conclude that the trial court correctly denied Precise's motion because it was not a party to the arbitration agreement between Soltero and Real Time, and it cannot compel arbitration based on theories of equitable estoppel, third-party beneficiary, or agency. We therefore affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

Real Time is a temporary staffing agency that hires and places temporary workers at businesses in California, including Precise. Real Time is a subsidiary of EmployBridge, LLC (EmployBridge).[1]

Soltero applied for employment with Real Time in December 2016. As part of the onboarding process, she electronically signed the Spanish language version of a Mutual Agreement Regarding Arbitration and Class Claims (Agreement). The appellate record includes a purported translation of the document into English.

The Agreement defined "the [C]ompany" to include EmployBridge, multiple other named companies, "and all related entities," but not their clients.[2] The Agreement stated that in the event of "any dispute between [Soltero] and the [C]ompany relating to or arising out of the employment or the termination of" her employment, "[Soltero] and the Company agree to

---

[1]     Real Time does business in California as Select Staffing, Inc. For clarity, we refer to it as Real Time throughout this opinion.

[2]     The accuracy of the English translation is questionable as it contains some garbled language. Because neither party disputes the translation, we construe it as best we can. According to the translation, the Agreement defined "Company" as "EmployBridge, StaffingSolutions, ProLogistix, ResourceMFG, resource accounting, a staff, also employment, MedicalSolutions, selecting staff, SelectRemedy, RemX specialty staffing, personal intelligent remedy and Westaff and all related entities [*sic*] . . . ."

submit all such claims or disputes to be resolved by final and binding arbitration, in accordance with the procedural rules of the Federal Arbitration Act." The Agreement stated that such disputes included, but were not limited to, grievances for breach of contract, wages, compensation, reimbursement, the Federal Labor Standards Act "and status of comparable or local the laws [*sic*]."

Real Time placed Soltero on a temporary work assignment with Precise from October 2017 through January 2021. A Real Time manager worked onsite at Precise, serving as the main point of contact for Real Time employees assigned to work there.

In February 2022, Soltero filed a class action complaint against Precise for its alleged failure to provide required meal periods and rest breaks to employees, failure to pay premiums for meal and rest break violations, and related claims for inaccurate wage statements and failure to immediately pay all wages due upon separation of employment, including meal and rest break premiums. Soltero asserted these claims under identified provisions of the Labor Code, the Industrial Welfare Commission's wage orders, and the unfair competition law (Bus. & Prof. Code, § 17200 et seq.). Soltero did not name Real Time as a defendant. The complaint mentioned Real Time only in the venue paragraph, which alleged that Soltero "was staffed by [Real Time], located in San Bernardino, to work at Precise's distribution warehouse." The complaint did not mention any of the terms of Soltero's employment agreement with Real Time.

Precise filed a motion to compel arbitration under the Agreement between Soltero and Real Time. Precise argued that even as a nonsignatory to the Agreement, it was entitled to compel arbitration based on theories of equitable estoppel, third-party beneficiary, and agency. Soltero opposed the

3

motion. After a hearing, the trial court denied Precise's motion to compel arbitration.

## DISCUSSION

By its terms, the Agreement only requires arbitration of employment disputes "between [Soltero] and the [C]ompany." Although Precise is not a party to the Agreement and does not claim that it falls within its definition of "the Company," Precise argues that it is nevertheless entitled to compel arbitration under the Agreement based on theories of equitable estoppel, third-party beneficiary, and agency. We address each theory in turn.

### I

### *Standard of Review*

Because the material facts are undisputed, we review de novo whether the trial court correctly denied Precise's motion to compel arbitration. (*Fuentes v. TMCSF, Inc.* (2018) 26 Cal.App.5th 541, 547 (*Fuentes*); *Goldman v. KPMG, LLP* (2009) 173 Cal.App.4th 209, 226, fn. 9 (*Goldman*).)

### II

### *Equitable Estoppel*

Although there is a strong public policy in favor of contractual arbitration, there is no policy compelling anyone to accept arbitration of controversies which they have not agreed to arbitrate. (*Victoria v. Superior Court* (1985) 40 Cal.3d 734, 744.) Because arbitration is a matter of contract, the basic rule is that one must be a party to an arbitration agreement to be bound by it or invoke it—with limited exceptions. (*DMS Services, LLC v. Superior Court* (2012) 205 Cal.App.4th 1346, 1352.)

One such exception is the doctrine of equitable estoppel. Equitable estoppel precludes a party from asserting rights they otherwise would have had against another when their own conduct renders assertion of those rights

inequitable. (*Goldman, supra*, 173 Cal.App.4th at p. 220.) As applied in the arbitration context, "if a plaintiff relies on the terms of an agreement to assert his or her claims against a nonsignatory defendant, the plaintiff may be equitably estopped from repudiating the arbitration clause of that very agreement. In other words, a signatory to an agreement with an arbitration clause cannot 'have it both ways'; the signatory 'cannot, on the one hand, seek to hold the non-signatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory.' " (*Ibid.*, internal quotation marks omitted.)

"[T]he sine qua non for application of equitable estoppel as the basis for allowing a nonsignatory to enforce an arbitration clause is that the claims [the] plaintiff asserts against the nonsignatory must be dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause." (*Goldman, supra*, 173 Cal.App.4th at pp. 217–218.) " '*The plaintiff's actual dependence on the underlying contract in making out the claim against the nonsignatory . . . is . . . always the* sine qua non *of an appropriate situation for applying equitable estoppel.*' " (*Fuentes, supra*, 26 Cal.App.5th at p. 552, internal quotation marks omitted.) "This requirement comports with, and indeed derives from, the very purposes of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory, while at the same time refusing to arbitrate with the nonsignatory under another clause of that same agreement." (*Goldman*, at p. 221.)

Applying these principles, we conclude that the trial court correctly declined to compel arbitration based on the doctrine of equitable estoppel.

Soltero is suing Precise for its alleged violations of Labor Code provisions governing meal and rest breaks, premium payments for missed meal and rest breaks, wage statements, and immediate payment of final wages upon separation of employment. Her complaint does not mention or rely on any provision of her employment agreement with Real Time as a basis for imposing liability on Precise. Accordingly, Soltero's complaint against Precise is not "founded in and inextricably bound up with *the obligations imposed by the agreement containing the arbitration clause.*" (*Goldman, supra*, 173 Cal.App.4th at p. 219.) She is not trying to have it both ways because she is not seeking to impose liability on Precise based on the terms of her employment agreement with Real Time while simultaneously seeking to avoid the arbitration clause of that same agreement.

Precise relies on the holding of *Garcia v. Pexco, LLC* (2017) 11 Cal.App.5th 782 (*Garcia*), which also involved the Real Time staffing agency. In that case, the plaintiff Garcia signed an arbitration agreement with Real Time as part of its hiring process. Real Time assigned him to work as a temporary employee for Pexco, which was not a party to the arbitration agreement. After Garcia was terminated, he filed a class action suit against both Real Time and Pexco for violations of the Labor Code and unfair business practices pertaining to payment of wages. Real Time and Pexco moved to compel arbitration, and the trial court granted the motion, relying on theories of equitable estoppel and agency as to Pexco. Garcia appealed the order only as to Pexco—not disputing that the trial court had properly ordered arbitration as to Real Time. (*Id*. at pp. 784–785.)

In affirming the trial court's equitable estoppel ruling as to Pexco, the Court of Appeal first noted that "[e]ven though Garcia's claims are styled as Labor Code violations, the arbitration agreement applies" because "Labor

6

Code violations are clearly, and indeed expressly, included as one of the types of disputes covered by the arbitration agreement." (*Garcia, supra*, 11 Cal.App.5th at p. 786.)  The court noted that even Garcia had conceded that the signatory "Real Time may compel arbitration of his statutory claims under the agreement." (*Ibid*.)

The court went on to reject Garcia's argument that the nonsignatory Pexco could not compel arbitration because he was only asserting statutory claims under the Labor Code and was not seeking to enforce the contractual terms of his employment agreement with Real Time. (*Garcia, supra*, 11 Cal.App.5th at pp. 786–787.)  Relying on *Boucher v. Alliance Title Co., Inc.* (2005) 127 Cal.App.4th 262 (*Boucher*), the *Garcia* court noted: "There, like here, the claims presumed the existence of the employment agreement with the signatory defendant." (*Garcia*, at p. 787.)

The court also found it significant that Garcia was suing both Real Time and Pexco for the same Labor Code violations on a theory that they were his joint employers.  The Court of Appeal explained: "[I]t is inequitable for the arbitration about Garcia's assignment with Pexco to proceed with Real Time, while preventing Pexco from participating.  This is because Garcia's claims against Pexco are rooted in his employment relationship with Real Time, and the governing arbitration agreement expressly includes statutory wage and hour claims." (*Garcia, supra*, 11 Cal.App.5th at pp. 787–788.)

Since the *Garcia* decision, several federal district courts have questioned whether it correctly applied California's equitable estoppel doctrine.  (See, e.g., *Soto v. O.C. Communications, Inc.* (N.D. Cal., Nov. 21, 2018, No. 17-cv-00251-VC) 2018 U.S. Dist. LEXIS 199011, at *2 & fn. 1 ["*Garcia*'s interpretation of the equitable estoppel exception may be inconsistent with traditional notions of equitable estoppel and other

7

California Court of Appeal cases"]; *Shoals v. Owens & Minor Distrib., Inc.* (E.D. Cal., Oct. 31, 2018, NO. 2:18-cv-2355 WBS EFB) 2018 U.S. Dist. LEXIS 186729, at *21–*23 [characterizing *Garcia* as "an outlier decision" on equitable estoppel that "appears to be contrary to established law and has not been adopted by the California Supreme Court" and "is inconsistent with the purpose of the doctrine"].)[3]

For several reasons, we agree that *Garcia* misapplied California law on this issue. First, the court relied heavily on the fact that the arbitration clause applied to claims of Labor Code violations. (*Garcia, supra*, 11 Cal.App.5th at p. 786.) Under the equitable estoppel doctrine, however, a nonsignatory defendant cannot compel arbitration merely because the scope of the arbitration agreement extends to the types of claims asserted by the plaintiff. (See *Franklin, supra*, 998 F.3d at p. 872 [the "scope-of-arbitration analysis of a claim between two signatories provides no guidance for whether claims against a nonsignatory are 'intertwined with' the employment contract"].) Rather, the critical question is whether the plaintiff's claims against the nonsignatory defendant actually rely on the terms of the contract containing the arbitration clause. (*Fuentes, supra*, 26 Cal.App.5th at p. 552; *Goldman, supra*, 173 Cal.App.4th at p. 231.) If so, the plaintiff cannot avoid the arbitration clause. If not, the nonsignatory defendant cannot compel arbitration under the equitable estoppel doctrine—even if the plaintiff is

---

[3] In *Franklin v. Community Regional Medical Center* (9th Cir. 2021) 998 F.3d 867 (*Franklin*), the Ninth Circuit acknowledged that "some federal district courts have disagreed with *Garcia*'s result" (*id.* at p. 874, fn. 9), but concluded that absent any indication the California Supreme Court would reject *Garcia*, it would follow *Garcia*'s interpretation of California law as a matter of comity and federalism (*id.* at pp. 871–874).

asserting claims of a type that would otherwise fall within the scope of the arbitration agreement if asserted against a signatory defendant.

Second, *Garcia* erred by relying on the fact that the Labor Code claims against the nonsignatory defendant "presumed the existence of the employment agreement with the signatory defendant." (*Garcia, supra*, 11 Cal.App.5th at p. 787.) As the *Goldman* court explained, it is not enough that the plaintiff's complaint presumes the existence of a contract that contains an arbitration clause. (*Goldman, supra*, 173 Cal.App.4th at p. 231.) In this context, " 'presum[ing] the existence of' an agreement is not a stand-alone principle, but merely an elaboration of the underlying principle, stated in *all* the cases: actual reliance on the terms of the agreement to impose liability on the nonsignatory." (*Ibid.*; see also *Mattson Technology, Inc. v. Applied Materials, Inc.* (2023) 96 Cal.App.5th 1149, 1156 ["Nor is it sufficient that . . . the controversy would not have occurred but for the existence of the contract, provided the contract is not the basis for the claims against the nonsignatory."].) For example, in the *Boucher* case cited by *Garcia*, the plaintiff's claims against his employer's successor did not just presume the existence of his employment contract containing the arbitration agreement. Rather, the plaintiff actually relied on the terms of his employment contract in suing the nonsignatory successor employer, including by asserting claims for breach of and interference with the employment contract.[4] (*Boucher, supra*, 127 Cal.App.4th at pp. 265–266, 272–273.)

---

[4] In *Boucher*, the plaintiff's original employer transferred all of its operations and assets to another subsidiary of the same parent company, which tried to give the plaintiff a less generous compensation package. The plaintiff refused to accept the offer, was terminated, and then sued the successor employer for claims including breach of his contract with the original employer. (*Boucher, supra*, 127 Cal.App.4th at pp. 265–266.)

Finally, the *Garcia* court did not explain how Garcia's Labor Code claims against Pexco actually relied on the substantive terms of his employment agreement with Real Time. The court observed that "Garcia's claims against Pexco are *rooted in* his employment relationship with Real Time" (*Garcia, supra*, 11 Cal.App.5th at p. 787, italics added), but that is not a legally sufficient basis for equitable estoppel absent actual reliance on the terms of the contract containing the arbitration agreement to establish liability. (*Goldman, supra*, 173 Cal.App.4th at p. 231.) The court generally described Garcia's claims as being "for violations of the Labor Code and unfair business practices pertaining to payment of wages during his assignment with Pexco." (*Garcia*, at p. 785.) Although these statutory claims may have been rooted in Garcia's employment *relationship* with Real Time, that does not explain how they relied on the terms of his employment *contract* with Real Time as a basis for imposing liability against Pexco.[5] (See *Elijahjuan v. Superior Court* (2012) 210 Cal.App.4th 15, 23 ["petitioners' rights under the Labor Code are distinct from their contractual rights . . . ."].)

For all these reasons, we decline to follow *Garcia*'s equitable estoppel holding. We further note that this portion of the *Garcia* decision was not

_____

[5] Many Labor Code claims are rooted in the employment relationship but arise independently of the terms of the plaintiff's employment contract. For example, Labor Code claims for failure to pay the legal minimum wage or overtime compensation do not depend on the employment contract. (See Lab. Code, § 1194, subd. (a) [authorizing such claims "[n]otwithstanding any agreement to work for a lesser wage"].) The statutory duty to provide accurate wage statements also is not derived from any contractual obligation. (*Id.*, § 226, subd. (a).) The same is true of the employer's duties to provide meal and rest breaks (*id.*, § 226.7, subd. (b)), pay meal and rest break premiums, (*id.*, subd. (c)), and pay final wages within 72 hours of separation of employment or face additional waiting time penalties (Lab. Code, §§ 201, 202, 203).

10

necessary to the result because the court also concluded that the nonsignatory Pexco could compel arbitration under a separate agency exception. (*Garcia, supra*, 11 Cal.App.5th at p. 788.) On that issue, the court again relied on the plaintiff's own allegations that Pexco and Real Time were joint employers acting as agents for one another. (*Ibid*.) Nothing we say here is intended to cast doubt on the court's application of the agency exception. (See *Dryer v. Los Angeles Rams* (1985) 40 Cal.3d 406, 418 [where complaint alleges that nonsignatory defendants acted as agents for signatory defendant, the nonsignatory defendants are entitled to benefit of arbitration agreement].)

Finally, even assuming that *Garcia* correctly applied the equitable estoppel doctrine, it is distinguishable because Soltero is not suing both Precise and Real Time on a joint employer theory. Instead, she is only suing the nonsignatory Precise. In *Hernandez v. Meridian Management Services, LLC* (2023) 87 Cal.App.5th 1214 (*Hernandez*), the court declined to apply equitable estoppel to compel arbitration in analogous circumstances. There, the plaintiff Hernandez signed an arbitration contract with an employer called Intelex, but she also worked for a variety of other related and jointly owned and operated companies referred to in the court's opinion as "Other Firms." The Other Firms did not contract for arbitration with Hernandez. After Hernandez was terminated, she brought employment claims against the Other Firms, but not Intelex. The Other Firms moved to compel arbitration under the arbitration agreement with Intelex based on theories of equitable estoppel, third-party beneficiary, and agency. The trial court denied the motion. (*Id*. at pp. 1217–1218.)

In affirming, the Court of Appeal quoted and approved the trial court's discussion of equitable estoppel as follows: " '[T]ypically the doctrine of

11

equitable estoppel is applied where a signatory has sued *both* another signatory *and* certain non-signatories on identical claims.' " (*Hernandez, supra*, 87 Cal.App.5th at p. 1219.) " '[The Other Firms] complain[] that it is unfair for [Hernandez] to tailor her complaint in such a way as to avoid arbitration. But it isn't, really. There is nothing wrong with either party wanting to appear in court, or in arbitration. And it isn't as though [Hernandez] is trying to have it both ways–to appear in court, she has completely given up her claims against Intelex. Parties make tactical "bargains" like this all the time.' " (*Ibid*.)

Likewise, Soltero is not trying to have it both ways because she has foregone any claims against Real Time and opted to litigate her claims in court only against Precise, which is not a party to the arbitration agreement. She is entitled to make this choice. In these circumstances, there is nothing unfair about applying to Precise "the usual requirement that you must be a party to a contract to enforce it." (*Hernandez, supra*, 87 Cal.App.5th at p. 1220.) We therefore reject the equitable estoppel theory.

### III

### *Third-Party Beneficiary*

Third-party beneficiary theory is another exception to the usual rule that only a party to an arbitration agreement may enforce it. (*Fuentes, supra*, 26 Cal.App.5th at p. 551.) Precise argues that it is a third-party beneficiary of the employment agreement between Soltero and Real Time because the essential purpose of the employment agreement was to provide labor to Real Time's clients, such as Precise. As a third-party beneficiary of the employment agreement, Precise contends that it has standing to enforce the arbitration agreement between Soltero and Real Time that is part of their employment agreement.

12

In this context, however, the question is not whether the party seeking to compel arbitration is a third-party beneficiary of the contract containing the arbitration clause, but whether it is a third-party beneficiary of the arbitration clause itself. (*Fuentes, supra*, 26 Cal.App.5th at pp. 551–552.) To invoke the third-party beneficiary exception, the nonsignatory " 'ha[s] to show that *the arbitration clause* . . . was made expressly for [its] benefit.' " (*Ibid.*, quoting *Ronay Family Limited Partnership v. Tweed* (2013) 216 Cal.App.4th 830, 838.)

In *Fuentes*, for example, the seller of a motorcycle (Riverside) sought to compel arbitration under the arbitration clause of a finance agreement between the buyer and another party (Eaglemark). (*Fuentes, supra*, 26 Cal.App.5th at pp. 545–546.) The Court of Appeal assumed that Riverside was a third-party beneficiary of the finance agreement because it required that Eaglemark pay the loan proceeds to Riverside. (*Id*. at p. 552 ["We accept, for the sake of argument, that Riverside was the third party beneficiary of Eaglemark's promise to pay the loan proceeds to it."].) Yet the court concluded that Riverside was not a third-party beneficiary of the arbitration clause in the finance agreement. The court explained: "The arbitration clause . . . had its own list of intended third party beneficiaries; as we have already discussed, Riverside was not among them. Thus, the contract affirmatively disproves any intent that the arbitration clause should benefit Riverside." (*Ibid*.)

The same is true here. The arbitration agreement had its own list of intended third-party beneficiaries. Although the English language translation leaves much to be desired, it required arbitration of any employment disputes between Soltero and "the Company," which it defined as EmployBridge, other named entities, and all "related entities," such as

13

Real Time, but not their clients, such as Precise. Precise makes no argument that it is included in this list as an intended beneficiary *of the arbitration clause*. Thus, even assuming that Precise could be considered a third-party beneficiary of the employment agreement between Soltero and Real Time, it has failed to demonstrate that it is an intended third-party beneficiary of the arbitration agreement.

IV

*Agency*

"The agency exception is another exception to the general rule that only a party to an arbitration agreement may enforce it." (*Garcia, supra*, 11 Cal.App.5th at p. 788.) "The exception applies, and a defendant may enforce the arbitration agreement, 'when a plaintiff alleges a defendant acted as an agent of a party to an arbitration agreement. . . .' " (*Ibid*., quoting *Thomas v. Westlake* (2012) 204 Cal.App.4th 605, 614.)

Soltero's complaint does not allege that Precise acted as an agent of Real Time or vice versa. Nor did Precise submit any evidence of such an agency relationship. The record includes no allegation or evidence that either entity had control over or a right to control the other or authority to act on the other's behalf. Absent any such allegation or evidence of an agency relationship, there is no basis to apply the agency exception. (*Hernandez, supra*, 87 Cal.App.5th at pp. 1220–1221 [refusing to apply agency exception to compel arbitration in absence of any allegation or evidence that plaintiff's employers had authority to act on behalf of each other].)

Precise contends that Soltero "effectively" alleged that Precise and Real Time were her joint employers (and therefore agents of one another) by alleging in the venue paragraph of her complaint that she "was staffed by [Real Time], located in San Bernardino, to work at Precise's distribution

14

warehouse." But Precise cites no authority holding that a principal-agent relationship arises as a matter of law whenever a staffing agency provides a client with a temporary worker.[6] The law is to the contrary. (*Grande v. Eisenhower Medical Center* (2020) 44 Cal.App.5th 1147, 1166–1167 [finding no principal-agent relationship in absence of evidence that staffing agency and client exercised control over each other].) Thus, the agency theory fails as well.

DISPOSITION

The order denying Precise's motion to compel arbitration is affirmed. Respondent is entitled to recover her costs on appeal.

BUCHANAN, J.

I CONCUR:

DO, J.

I CONCUR IN THE RESULT:

IRION, Acting P. J.

---

6    Contrary to Precise's suggestion, Labor Code section 2810.3, subdivision (b) does not create a principal-agent relationship between a staffing agency and its client employers. It merely states that "[a] client employer shall share with a labor contractor all civil legal responsibility and civil liability for all workers supplied by that labor contractor for both of the following: [¶] (1) The payment of wages. [¶] (2) Failure to secure valid workers' compensation coverage as required by Section 3700." (Lab. Code, § 2810.3, subd. (b).)